496 So.2d 305 (1986)
Sharon CRIER
v.
Dr. Thomas S. WHITECLOUD, III and Children's Hospital.
No. 84-C-1699.
Supreme Court of Louisiana.
October 30, 1986.
*306 Joseph W. Thomas, Ammon L. Miller, Jr., New Orleans, for applicant-plaintiff.
Stewart E. Niles, Jr., Vivian L. Madison, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Peter T. Dazzio, Baton Rouge, for defendants-respondents.
Ricardo M. Guevara, Baton Rouge, Robert J. Conrad, Jr., Adams & Reese, New Orleans, John McKinley, Monroe, Fred F.L. Herman, New Orleans, Pamela Crawford, Baton Rouge, amicus curiae.

ON REHEARING
MARCUS, Justice.
We granted a rehearing to reconsider whether La.R.S. 9:5628 bars a claim of medical malpractice when the injury results not at the time of the patient's treatment but instead occurs over three years after "the date of the alleged act, omission or neglect."
In 1978, Dr. Thomas S. Whitecloud, III operated on Sharon Crier at Children's Hospital, surgically implanting a Harrington rod in her back to correct her scoliosis. The operation was apparently successful. However, in March of 1982 Ms. Crier began to experience severe back pain. X-rays revealed that the rod in her back was broken. Ms. Crier filed suit against the doctor and the hospital within a year of this discovery.[1] She alleged that defendants had been negligent in using a defective Harrington rod and/or improperly implanting the rod in her back.
The doctor filed a peremptory exception of prescription based on La.R.S. 9:5628, which provides:
A. No action for damages for injury or death against any physician, chiropractor, *307 dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
After a hearing, the trial judge sustained the doctor's exception and dismissed plaintiff's suit as to him. The court of appeal, after noting that the sole issue before it was the constitutionality of La.R.S. 9:5628, found that the statute did not violate Ms. Crier's rights to due process, equal protection and open access to courts guaranteed by the Louisiana constitution. Accordingly, it affirmed the judgment of the trial court.[2] On Ms. Crier's application, we granted certiorari to review the correctness of that decision.[3] We did not reach the constitutional issues on original hearing because we concluded that La.R.S. 9:5628 is a prescriptive statute and that "because the onset of injury marked the first point in time that the courts could take cognizance of plaintiff's claim, ... the commencement of prescription on any `action for damages for injury' resulting from the initial act or omission was suspended until the injury actually occurred." We granted a rehearing to consider whether this decision is a correct interpretation of Louisiana law and whether it conflicts with Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), rendered the same day as our original opinion in this case.
Hebert involved a medical malpractice suit timely filed against a hospital. A doctor was made an additional defendant more than three years after the date of the alleged malpractice. We first noted that La.R.S. 9:5628 now governs the time for filing medical malpractice actions. It provides that a suit must be brought within one year from the date of the alleged act, omission or neglect, or within one year from date of discovery of same. With respect to claims filed within one year from date of discovery, suit must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. We concluded that La.R.S. 9:5628 is a prescription statute with one qualification, that is, that the contra non valentem[4] type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Thus, we found that timely suit against a solidary obligor interrupts the prescription set forth in La.R.S. 9:5628. Hence, the timely suit against the hospital (a purported solidary obligor) interrupted prescription as to the doctor. However, we noted in a footnote that our holding assumed that the hospital and the doctor were both negligent and thus solidary obligors, which remained to be proven at trial. If plaintiff failed to prove negligence on the part of the hospital, the doctor's peremptory exception of prescription, which can be filed at any time (La.Code Civ.P. art. 928(B)), should be maintained. In effect, we held that if there was no interruption, the suit filed against the doctor more than three years from the alleged act, omission or neglect would have prescribed.
In the present case, suit was filed against all defendants more than "three years from the date of the alleged act, omission or neglect." There was no alleged *308 interruption of prescription. Therefore, under Hebert, Ms. Crier's suit against the doctor would be barred by La.R.S. 9:5628. Nonetheless, Ms. Crier claims that this denial of her right to sue violates her rights of due process and equal protection under the federal and state constitutions, as well as her right of access to the courts guaranteed by art. 1, § 22 of the Louisiana constitution. We must therefore address the constitutionality of La.R.S. 9:5628.

DUE PROCESS
The fourteenth amendment to the United States Constitution and art. 1, § 2 of the Louisiana Constitution guarantee freedom from the deprivation of life, liberty or property without due process of law. "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except `for cause.'" (Emphasis added.) Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). However, the due process clause does not guarantee access to the courts for all individuals in all circumstances. Boddie v. Connecticut, 401 U.S. 371, 382, 91 S.Ct. 780, 788, 28 L.Ed.2d 113 (1971).
We must look to Louisiana law to determine if Ms. Crier has a property interest in bringing a cause of action that is protected under the due process clause. In order to file suit, a plaintiff must be able to state a cause of actiona wrongful act and resulting damages. Rayne State Bank & Trust Co. v. National Union Fire Insurance Co., 483 So.2d 987, 995 (La.1986). When an injury has occurred which gives the injured party a cause of action, that cause of action becomes "a vested property right which is protected by the guarantee of due process." Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381, 1387 (La.1978).
However, in this state, "[l]aw is a solemn expression of legislative will." La.Civ. Code art. 1. We held in Burmaster, supra, that
the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries.
In Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the United States Supreme Court hypothesized that a cause of action in tort may be a "species of `property' protected by the Due Process Clause." However, the Court also acknowledged that a state has the right to fashion and limit the causes of action that it recognizes. In denying a due process challenge to the constitutionality of a California statute that gave the members of a parole board absolute immunity from a suit filed due to a wrongful death that resulted from their negligent release of a dangerous inmate, the Court stated:
Arguably, the cause of action for wrongful death that the State has created is a species of "property" protected by the Due Process Clause. On that hypothesis, the immunity statute could be viewed as depriving the plaintiffs of that property interest insofar as they seek to assert a claim against parole officials. [Footnote omitted.] But even if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.
The Court determined that the statute in question was rational since the possibility of judicial review might inevitably influence a parole official's exercise of discretion. The Court concluded that the federal courts had "no authority to pass judgment on the wisdom of the underlying policy determination."
In the instant case, the legislature enacted La.R.S. 9:5628 in an attempt to *309 alleviate a "medical malpractice insurance crisis." Malpractice claims were proliferating at the same time that the amounts of damage awards were increasing rapidly. Premiums for malpractice insurance had skyrocketed, forcing doctors to pass increased costs on to patients and creating fears that many physicians would simply abandon the practice of medicine. The increased insurance costs were primarily blamed on the lengthy period in which malpractice claims could be filed.[5] The decision by the legislature to limit malpractice actions against "physicians, chiropractors, dentists, or hospitals" to those situations where the injury occurs within three years of the allegedly negligent treatment was intended to alleviate this situation. As a result, persons who do not file suit within this time limit have no cause of action and thus no vested property right in bringing suit. Moreover, the statute is rationally related to the state's interest in reasonable medical costs and readily available health care. Accordingly, we find that La.R.S. 9:5628 does not violate Ms. Crier's right to due process of law.

OPEN COURTS
Article 1, § 22 of the Louisiana Constitution of 1974 provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
There is no analogous provision in the United States Constitution. Ms. Crier contends that art. 1, § 22 creates greater rights than those guaranteed by the federal constitution. She argues that art. 1, § 22 requires that the state must provide a remedy at law for every injury to "person, property, reputation, or other rights."
In order to determine correctly the extent of art. 1, § 22's mandate, we must examine its history. Article 1, § 22 was enacted to replace art. 1, § 6 of the 1921 constitution. Although the wording of § 6 was changed slightly, this did not make a substantive change in the law. However, before adopting the present § 22, the 1974 Constitutional Convention debated and rejected a different wording. The proposed version of section 22 read:
All courts shall be open and every person shall have an adequate remedy by due process of law and justice administered without denial, partiality, or unreasonable delay for actual or threatened injury to him and his person, property, reputation, or other rights. Neither the state, its political subdivisions, nor any private person shall be immune from suit and liability.[[6]] [Emphasis added.]
The convention expressed concern that the proposed language granting a remedy for "other rights" would lead to a proliferation of lawsuits. The proponents of the measure argued that their proposal would not give every person a right to sue in every situation, only in those cases where the legislature had recognized a remedy. The convention also discussed the fact that the proposed language would abolish numerous forms of statutory immunity presently embodied in the law. After considerable debate, this version of art. 1, § 22 was abandoned.[7]
From this history, we conclude that in adopting art. 1, § 22, the Constitutional
*310 Convention did not intend to limit the legislature's ability to restrict causes of action or to bar the legislature from creating various areas of statutory immunity from suit.
Statutes of limitation are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of action can arise. Until the time that a cause of action vests, a legislature has the power to create new rights and abolish old ones. Dunn v. Felt, 379 A.2d 1140, 1141 (Del.Super.1977). In finding that the right to recover in tort is not a fundamental right, our court has noted that "[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary." Bazley v. Tortorich, 397 So.2d 475, 485 (La.1981); Everett v. Goldman, 359 So.2d 1256 (La.1978).
The constitutional guarantee providing for open courts and insuring a remedy for injuries does not warrant a remedy for every single injury; it applies only to those injuries that constitute violations of established law which the courts can properly recognize. Harrison v. Schrader, 569 S.W.2d 822, 827 (Tenn.1978).
The legislature has the sole discretion in fixing statutes of limitation. We interpret art. 1, § 22 to be a mandate to the judiciary of this state rather than a limitation on the legislature. Article 1, § 22 guarantees that the courts will be open to ensure an adequate remedy by due process of law; however, where, as here, a person has no cause of action that is a vested property right, this constitutional provision affords no substantive relief. Thus, La.R.S. 9:5628 does not violate plaintiff's right of access to the courts.

EQUAL PROTECTION
Plaintiff also contends that La.R.S. 9:5628 violates the equal protection clauses of the federal and state constitutions.
Recently, in Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), we recognized that the rights guaranteed by the Louisiana constitution are not always synonymous with federal constitutional rights. The equal protection clause of the Louisiana constitution is set forth in art. 1, § 3, which provides in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition or political ideas or affiliations.
In Sibley, we held that "the federal multilevel system is not an appropriate model for interpreting and applying the protection of equal laws pledged by our state constitution... when a law classifying individuals on the basis of physical condition is attacked...." In such a situation, the burden is shifted to the proponent of the legislation to show that "the law does not arbitrarily, capriciously, or unreasonably discriminate against the disadvantaged class by demonstrating that the legislative classification substantially furthers a legitimate state objective."
Thus, when a statute "classifies persons on the basis of birth, age, culture, physical condition, or political ideas or affiliations," the burden is shifted to the state or other advocate of the classification to prove that the classification has a reasonable basis. However, if a law classifies individuals on a basis outside the scope of art. 1, § 3, it will be upheld unless a member of the disadvantaged class "shows that it does not suitably further any appropriate state interest."
Sibley dealt with the constitutionality of La.R.S. 40:1299.39 which barred medical malpractice awards against the state in excess of $500,000. We found that this statute created two classes: one, a group of malpractice victims who have suffered damage in excess of $500,000; and a second *311 class of less severely injured victims. Victims in the latter class are allowed full recovery, while victims in the former class cannot recover all of their damages. Because the severity of a victim's physical damage determines the extent of his recovery, we determined that this statutory classification "disadvantages or discriminates against one class of individuals by reason of or because of their physical condition." Accordingly, we remanded to determine if this legislative classification substantially furthered a legitimate state purpose.
However, in the present case, La. R.S. 9:5628 does not discriminate on the basis of the severity of the injury. Rather, it affects equally all persons who undergo medical treatment. It provides notice that malpractice claims will be barred if they are not filed within "three years from the date of the alleged act, omission or neglect." The statute is merely a legislative determination that three years is a reasonable period of time in which to assert a medical malpractice claim.[8] It does not create a classification that "disadvantages or discriminates against one class of individuals by reason of or because of their physical condition." Hence, the classification is outside the scope of art. 1, § 3. Therefore, the statute should be upheld unless plaintiff shows that it does not further an appropriate state interest. Since plaintiff offered no evidence to meet this burden, La.R.S. 9:5628 is presumed constitutional under art. 1, § 3 of our state constitution. Moreover, since plaintiff offered no evidence to show that the statute was not rationally related to a reasonable state interest, it is likewise presumed constitutional under the equal protection clause of the federal constitution. A remand to the district court to afford plaintiff the opportunity to present evidence to carry her burden would serve no useful purpose because of the minimal level of scrutiny involved and the apparent state interest furthered by the statute.
Accordingly, Ms. Crier's suit against Dr. Whitecloud is barred by La.R.S. 9:5628.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
LEMMON, J., concurs and assigns reasons.
CALOGERO, J., concurs in part, dissents in part and assigns reasons.
DIXON, C.J., and DENNIS, J., dissent with reasons.
LEMMON, Justice, concurring.
On original hearing, we concluded that La.R.S. 9:5628 was intended as a prescriptive statute susceptible of suspension and that the commencement of the accrual of prescription was suspended between the time of the act or omission and the time of the occurrence of the injury. On reconsideration, we concede the obvious legislative intent of setting an outside limit on the discovery rule in medical malpractice cases.[1] The Legislature clearly intended to fix a maximum period of exposure to claims of medical malpractice reckoning from the date of the act or omission, even when the resulting injury does not manifest *312 itself immediately or does not occur immediately after the act.[2] We now address the constitutionality of that legislation.
The statute presents substantial issues regarding due process, equal protection and access to the courts. The length of the peremptive period is probably the bare minimum which meets due process requirements.[3] A person's access to the courts is subject to reasonable legislative restrictions when the person is asserting claims which, as in this case, are not based on constitutionally protected fundamental rights. The most troubling issue is the discriminatory treatment of victims of malpractice in relation to other tort victims who are not subject to any outside limits on the discovery rule.
In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), we reviewed the constitutionality of another medical malpractice limitation statute which restricted the amount of recovery. Concluding that a limitation on the maximum amount of recovery applicable only to the most horribly injured malpractice victims constituted discrimination among malpractice victims on the basis of physical condition, which is one of the categories expressly protected by La. Const. Art. I § 3 (1974) against unreasonable discrimination, we remanded the case to require proponents of the constitutionality of the statute to show that the statutory classification had a reasonable basis, that is, that the legislative classification substantially furthered a legitimate state purpose.
My dissent without reasons on original hearing in Sibley was based on the conclusion that denial of full recovery only to the very few catastrophically injured malpractice victims, while other malpractice victims recovered the full amount of their damages, did not appear to be a rational legislative response to any critical situation which may have existed because of an increase in malpractice claims and awards. Moreover, inasmuch as Sibley and Williams v. Lallie Kemp Charity Hospital, 428 So.2d 1000 (La.App. 1st Cir.1985), cert. denied 434 So.2d 1093 (La.1983) were the first cases to reach the appellate level in which the recovery would have exceeded $500,000 since the 1978 adoption of the statute, the limitation appeared to be so infrequently applicable as to have little significance in resolving any real or perceived crisis.
The statute under consideration in the instant case presents different considerations. Since La.R.S. 9:5628 treats all medical malpractice victims the same, there is no discrimination among malpractice victims on the basis of physical condition. Therefore, the classification of malpractice victims from other tort victims is subject to review at a lower level of constitutional scrutiny, and the burden of proof is on the party challenging the statute. Moreover, volumes have been written concerning the "long tail" of liability caused by the discovery rule which the courts had formulated in medical malpractice cases. The number of medical malpractice statutes of repose adopted throughout the country in the 1970s, as well as the significant volume of cases presented to the appellate courts of Louisiana since the adoption of La.R.S. 9:5628 in 1975, further suggest a legitimate legislative concern over the effect of the discovery rule on malpractice insurance rates and the corresponding effect on the availability of adequate health care. Therefore, unlike the limitation on the amount of recovery in Sibley, the placing of outside limits on the time for asserting malpractice claims appears to have been a rational response to the problems presented *313 to the Legislature by the proponents of the statute.
This decision is essentially a six-to-one holding that La.R.S. 9:5628 is not unconstitutional, at least on the showing in this record. Two of the dissenters would remand to allow plaintiff an opportunity to prove that the classification does not suitably further any appropriate state interest. While there is some attractiveness to according the opponents of the statute in this case (just as we did the proponents of the statute in Sibley ) an opportunity on remand to prove the appropriate standard set out in Sibley, this case is not as compelling because of the lower level of scrutiny and the more apparent reasonableness. Moreover, the plaintiff in this case knew from the outset that he bore the burden of proof in his attack on the constitutionality of the statute. Nevertheless, the holding in this case that the opponent of the statute failed to prove the absence of a reasonable basis for classification does not preclude other opponents from attempting this proof in future cases in which the constitutionality of La.R.S. 9:5628 is challenged.
CALOGERO, Justice, concurring in part and dissenting in part.
I do not believe that R.S. 9:5628, as found applicable in this case by the majority, violates the "access to courts" provision of the 1974 Louisiana Constitution, Art. I, § 22.
On the other hand I subscribe to Justice Dennis' view expressed here in dissent that this case should be remanded to afford the plaintiff an opportunity to present evidence and carry her burden to show that the statute does not substantially further any appropriate state interest. Sibley v. Board of Supervisors of LSU, 477 So.2d 1094, 1109 (La.1985).
DIXON, Chief Justice (dissenting).
I respectfully dissent.
A statute which allows prescription to run before a tort victim knows or should know that he has been damaged violates the "adequate remedy" required by Art. 1, § 22 of the Louisiana Constitution.
DENNIS, Judge, dissenting.
I respectfully dissent.
I disagree with the majority's facile conclusion that a remand to afford the plaintiff an opportunity to carry her burden "would serve no useful purpose because of the minimal level of scrutiny involved and the apparent state interest furthered by the statute." Translated into plain language, this means that, because the minimal level of scrutiny is the same under the state constitution as under the federal, and because the lowest level of scrutiny is virtually nonexistent under current interpretation of the federal constitution, the plaintiff's complaint would receive no scrutiny whatever upon remand, and therefore a remand would be futile.
I cannot subscribe to the majority's precipitate assumption that our state constitution offers no more protection of equal laws at the general level than the Fourteenth Amendment's equal protection clause as currently interpreted. In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985) this court recognized for the first time that Article I, § 3 of the 1974 Louisiana Constitution raises the threshold of equal protection and rejected the federal three level standard. In place of the minimal level of federal protection, under which judicial scrutiny is in reality non-existent, our constitution establishes its own minimal standard: when a law classifies individuals on any basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. Sibley v. Board of Supervisors, 477 So.2d at 1107. This safeguard goes beyond the federal decisional law construing the Fourteenth Amendment, which this court previously adhered to, and provides a new and more protective standard even at the minimal level. Id. at 1108. Accordingly, because Sibley had not been decided at the time of the trial of the exception of prescription herein, plaintiff *314 should not be penalized for her failure to anticipate our interpretation and her failure to present evidence under a newly discovered standard.
In the interest of fairness and justice, this case should be remanded to afford the plaintiff an opportunity to present evidence and carry her burden. We did as much for the medical malpractice defendant in Sibley and should now do so for a plaintiff in substantially similar circumstances. Furthermore, I assume that the majority in referring to the "apparent state interest furthered by the statute" meant only that the plaintiff did not carry her burden in this case, and did not intend to foreclose future plaintiffs from attacking the constitutionality of the statute.
In addition, I have serious reservations regarding whether the statutory limitation period, as applied to minors, violates their access to courts. The Supreme Court of Missouri recently struck down such a statutory provision on this basis stating:
The statutory limitation period, as applied to minors, violates their right of access to our courts under Mo. Const. art. I, § 14 and renders vacant the guarantee contained in this constitutional provision which declares in no uncertain terms "that the courts of justice shall be open to every person and certain remedy afforded for every injury to person ..." To the extent that it deprives minor medical malpractice claimants of the right to assert their own claims individually, makes them dependent on the actions of others to assert their claims, and works a forfeiture of those claims if not asserted within two years, the provisions of § 516.105 are too severe an interference with a minor's state constitutionally enumerated right of access to the courts to be justified by the state's interest in remedying a perceived medical malpractice crisis. Strahler v. St. Luke's Hospital, 706 S.W.2d 7, 11-12 (Mo.1986) (footnote omitted).
In my opinion the Missouri Court's reasoning has a great deal of merit. Although the plaintiff was treated at The Children's Hospital, however, it is unclear from the record whether she was a minor at the time of the alleged malpractice. Therefore, I would also remand this issue for additional evidence and argument.
I agree with the majority, however, that the statute in question does not classify individuals on the basis of their physical condition. Close scrutiny is required when a statute classifies persons for treatment different from others because of a difference in their physical condition and the burden is on the party who seeks to uphold the classification. It could be argued that a person whose damage does not occur soon after a malpractice has been committed upon him is discriminated against by the statute at issue because, unlike most malpractice victims, his physical condition is unimpaired during the three year prescriptive period and he therefore has no way of knowing that he should file suit until after his claim has prescribed. Ultimately, however, I conclude that the constitutional safeguard was designed to protect against invidious discrimination between individuals based on classifications according to the nature of their physical conditions rather than according to the temporal development of their physical damage or conditions.
NOTES
[1] This suit was consolidated with a products liability suit filed by plaintiff against the manufacturer of the rod.
[2] 455 So.2d 1279 (La.App. 4th Cir.1984).
[3] 460 So.2d 594 (La.1984).
[4] This is a judicially created exception based on the civilian doctrine of contra non valentem agere nulla currit praescriptio. (Prescription does not run against a party unable to act.)
[5] The length of time in which an insurance company can be held liable depends on the statute of limitations. When potential liability remains uncertain for a long period of time, it is difficult or impossible to make correct actuarial estimates. This inability to project future costs accurately has been cited as a primary cause for increased malpractice premiums and higher medical costs in general. For a more detailed discussion of the "malpractice insurance crisis," see Comment, Recent Medical Malpractice Legislation A First Checkup, 50 Tul.L.Rev. 655 (1976).
[6] Minutes of the 1974 Louisiana Constitutional Convention, Vol. VII, 1218 (45th Day ProceedingsSept. 12, 1973).
[7] Minutes of the 1974 Louisiana Constitutional Convention, Vol. VII, 1218-22 (45th Day ProceedingsSept. 12, 1973).
[8] While one may disagree with the legislature's choice of three years as the appropriate prescriptive period for medical malpractice, this decision is within the legislature's discretion. As we held in Bazley v. Tortorich, 397 So.2d 475 (La.1981):

[I]n the area of economics and social welfare, a legislature does not violate the equal protection clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.
[1] There has always been great difficulty in distinguishing prescriptive from peremptive statutes. The 1982 revisions to the Civil Code made the distinction extremely significant by providing that peremptive periods cannot be interrupted or suspended. Moreover, recently adopted peremptive statutes have gone far beyond traditional limitations of peremptive statutes to those which create rights which must be exercised within short periods for compelling reasons of public policy.
[2] The situations in which the injury does not occur immediately are the most troubling to me. The day after the allegedly negligent implantation in the present case, the only claim assertable by plaintiff was one to require proper implantation and any damages pertinent to the second surgery.
[3] Many other states have three-year periods. A few have shorter periods, but the periods in most states range from four to ten years.