620 So.2d 521 (1993)
In re Murley Hernandez LeBLANC and Don L. LeBlanc, Plaintiffs-Appellants,
v.
Luis MEZA, M.D., George Smith, M.D., Ronald Ritchey, M.D., Our Lady of Lourdes Regional Medical Center, and Richard P. Ieyoub, Attorney General of the State of Louisiana, Defendants-Appellees.
No. 92-1040.
Court of Appeal of Louisiana, Third Circuit.
June 16, 1993.
*522 Oscar William Boswell II, Lafayette, for Murley LeBlanc et ux.
Marc W. Judice, Lafayette, for Luis Meza, M.D. et al.
Peter T. Dazzio, Baton Rouge, for Our Lady of Lourdes Regional Medical Center.
Norman Willard Ershler, Baton Rouge, for State.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
DOMENGEAUX, Chief Judge.
Murley and Don LeBlanc, husband and wife, filed this medical malpractice action on August 6, 1990, against Our Lady of Lourdes Regional Medical Center and Drs. Luis Meza, George Smith, and Ronald Ritchey. Pursuant to La.R.S. 40:1299.47 B(2)(a), all of the defendants raised an exception of prescription in district court, and three defendants, Lourdes, Smith, and Ritchey, were dismissed from the suit after the trial court granted their exception. Plaintiffs appeal that judgment and we, albeit reluctantly, affirm. The claim against Dr. Meza is not before us and will not be addressed in this opinion.

FACTUAL ALLEGATIONS
Plaintiffs allege that Murley LeBlanc was hospitalized at Lourdes in March of 1985 and was treated by Drs. Ritchey and Smith. On March 5, she underwent surgery for colon cancer, which surgery necessitated a blood transfusion. Subsequent to her surgery, and for the next five years until the filing of this suit, Mrs. LeBlanc was treated by Dr. Meza, an oncologist.
In August of 1989, Mrs. LeBlanc submitted to a blood test required for the purchase of life insurance. The test revealed that she was infected with the human immunodeficiency virus (HIV), the virus believed to cause AIDS. Mrs. LeBlanc contends she was infected with HIV at the time of her 1985 surgery and blood transfusion.
The defendants contend that Lourdes did not and could not have tested its blood supply for HIV until at least March 20, 1985, when it received a newly released test for detecting HIV in blood samples. Mrs. LeBlanc's surgery was on March 5. Subsequent to Mrs. LeBlanc's discovery of HIV infection in 1989, Lourdes was able to confirm that one of the donors of the blood used during her surgery is currently infected with HIV.

CLAIMS ASSERTED
The plaintiffs' petition is prescribed on its face based on the provisions of La.R.S. 9:5628. However, the LeBlancs contend that the prescriptive period in § 5628 is inapplicable or has been interrupted and that their claims against all defendants were asserted timely.
The LeBlancs' primary claim against the hospital is one of strict liability; they contend that the hospital is liable as the distributor of defective blood, not merely as a provider of patient care. Hence, they argue the prescriptive periods of one and three years contained in La.R.S. 9:5628 A are not applicable and cannot operate to bar their suit against the hospital. In support of their claim against Lourdes, the LeBlancs argue that in 1985, according to then current legislation, the distribution of blood was neither a medical service nor a part of patient care for purposes of the Medical Malpractice Act; accordingly, the pertinent prescriptive period is one year from the date they discovered their damage in August of 1989.
The LeBlancs' additional claim against the hospital, and their claims against Drs. Ritchey and Smith, are based on the patient care provided by those defendants. First, the LeBlancs suggest that Lourdes, Ritchey, and Smith failed to inform them that Mrs. LeBlanc received a transfusion and that as a result she should be tested for HIV within three years (presumably so that she could file suit against them timely). Second, they argue the failure to inform constitutes the violation of a continuing duty, and when such tortious conduct continues, prescription does not begin to run until the wrongful conduct ceases.
*523 Finally, the LeBlancs contend that if the prescriptive period articulated in La.R.S. 9:5628 has not been interrupted or found to be inapplicable, then the statute itself is unconstitutional as it applies to HIV infected persons.
Pursuant to La.R.S. 9:2797, we reject the plaintiffs' strict liability claim against Lourdes. We decline to take up the plaintiffs' suggestion that we carve an exception out of § 2797 for the "distribution" of defective blood. Additionally, we find no support in the record for the plaintiffs' suggestion that the defendants had a continuing duty to inform Mrs. LeBlanc that she had a transfusion and should therefore be tested for HIV. Furthermore, the record does not support the conclusion that the defendants acted to prevent the plaintiffs from availing themselves of their cause of action.

CONTRA NON VALENTEM AND CONSTITUTIONALITY OF § 5628
The LeBlancs' constitutional argument is based on the jurisprudential rule of contra non valentem which essentially provides that prescription does not run against a party unable to act. However, as the trial court noted, the general rule in Louisiana is that contra non valentem does not apply in medical malpractice actions. See Chaney v. State, Department of Health and Human Resources, 432 So.2d 256 (La. 1983); Crier v. Whitecloud, 496 So.2d 305 (La.1986); Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La.1990), all cited by the trial judge in his reasons for ruling. These cases have held that the provisions of La.R.S. 9:5628 override this jurisprudentially created exception to prescription. Essentially, by its terms, § 5628 is peremptive.
In this action, the plaintiffs have called into question the constitutionality of § 5628, as it has been interpreted as a peremptory statute which overrides the equitable doctrine of contra non valentem. The State's attorney general was joined in the suit as an indispensable party, pursuant to La.R.S. 49:257(B) and La.C.C.P. Art. 1880, and filed an answer asserting the constitutionality of § 5628. The trial court conducted an evidentiary hearing and considered the constitutionality issue. Both sides thoroughly briefed the issue for the trial court's benefit.
The defendants' argument in favor of upholding the statute's constitutionality is based on a long line of Louisiana cases which have considered and rejected constitutional attacks. The LeBlancs' argument against upholding the constitutionality of the statute is premised on the equal protection and adequate remedy provisions of the Louisiana Constitution. They argue first, that because Mrs. LeBlanc belongs to a class of individuals who, statistically, will not develop AIDS within three years of infection with HIV, her right to equal protection has been violated. The class to which Mrs. LeBlanc belongs is defined by age and physical condition, two factors which cannot be used to discriminate. Second, the LeBlancs argue that the statute denies an adequate remedy to the 92% of HIV infected persons who do not develop AIDS within three years of infection.
The trial court considered the LeBlancs' arguments and supporting statistical and expert testimony and rejected their constitutional attack. The trial judge relied instead on the jurisprudence which has consistently upheld the statute's constitutionality. In the Crier case, for instance, the Supreme Court was presented with an attack on the constitutionality of § 5628 based on alleged violations of the adequate remedy and equal protection provisions of our state constitution. The court rejected these arguments and found that the Louisiana Constitution does not guarantee an adequate remedy "for every single injury." Further, since the Crier plaintiff offered no evidence to show that the statute does not further an appropriate state interest, it is presumed to be constitutional under the federal and state equal protection provisions. We, too, feel constrained to follow this jurisprudence; however, we point out several recent developments which indicate § 5628 may indeed be held unconstitutional in the near future by our Supreme Court.

*524 RECENT DEVELOPMENTS

In 1990 and 1993, the Supreme Court suggested that the doctrine of contra non valentem may apply in medical malpractice cases where the health care provider himself has done some act which prevents the victim from availing himself of his cause of action for medical malpractice. See Rajnowski, supra, and Taylor v. Giddens, 618 So.2d 834 (La.1993). However, both of those cases reiterated that the so-called "discovery rule" of contra non valentem does not apply in medical malpractice actions. See Taylor, p. 842 opinion. The discovery rule states that prescription does not run when the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. See Rajnowski and Whitnell v. Menville, 540 So.2d 304 (La.1989).
In 1992, in the cases of Whitnell v. Silverman, 598 So.2d 345 (La.1992) and Reed v. St. Charles General Hospital, 602 So.2d 784 (La.App. 4th Cir.1992), the courts remanded to the trial courts with exact instructions to determine the constitutionality of § 5628. In Whitnell, the Supreme Court specifically noted that the defendant doctor had done nothing to prevent the plaintiff from availing herself of her claim. Therefore, the Court implied that the "discovery rule" was to be considered in the evidentiary hearing on constitutionality. As of this writing, the hearing has been completed and the trial judge has taken the matter under advisement.
Also in 1992, the Second Circuit decided the case of Branch v. Willis-Knighton Medical Center, 607 So.2d 883 (La.App.2d Cir.1992), a case which involved a blood transfusion in 1976 and the discovery of hepatitis in 1989. The Second Circuit reversed the trial court and upheld the defendant's peremptory exception of prescription, effectively barring the plaintiff's claim. On January 29, 1993, the Supreme Court granted a writ in this case and a decision has not yet been rendered. See Branch v. Willis-Knighton Medical Center, 612 So.2d 43 (La.1993).
The Supreme Court denied writs on May 7, 1993 in the First Circuit case of Winder v. Avet, 613 So.2d 199 (La.App. 1st Cir. 1992), a case which allowed a plaintiff to bring a suit on October 14, 1988, for alleged malpractice which occurred in 1982. The First Circuit, in a three to two decision, based its opinion on the continuing tort theory, and not on the unconstitutionality of § 5628. However, the two dissenters cited the prescription statute as controlling and noted that the doctrine of contra non valentem has been held inapplicable in medical malpractice cases.
Based on this jurisprudence, we believe that a Supreme Court ruling on the issue of the constitutionality of § 5628 is imminent. We will await a decision, and we decline in this instance to declare the statute unconstitutional based on the statistical evidence presented by the LeBlancs. While it may be true that the statute operates to discriminate against Mrs. LeBlanc and members of her class, we cannot say that this discrimination overrides the State's interest in limiting the time period for bringing medical malpractice actions. Nor can we say that this legislative restriction on a plaintiff's cause of action is violative of the adequate remedy provision of the constitution.

CONCLUSION
In reviewing this case, we have addressed the limited constitutional question of whether the "discovery rule" of the contra non valentem doctrine is applicable in this medical malpractice case. The Louisiana Supreme Court has already upheld the constitutionality of the medical malpractice prescription statute, § 5628. See Crier, supra. The Supreme Court has also consistently declined to apply the "discovery rule" to medical malpractice cases, most recently in Taylor, supra, decided only a few weeks ago. While it is possible that the Supreme Court may reconsider these questions, see Whitnell, supra, and Branch, supra, it is not within our province to second guess our higher court in the face of long-standing jurisprudence and clearly articulated legislative will.
*525 For the foregoing reasons, the judgment of the trial court is affirmed at plaintiffs' cost.
AFFIRMED.
SAUNDERS, J., dissents and assigns reasons.
SAUNDERS, Judge, dissenting.
I respectfully dissent. I cannot agree with the majority's position that an action in medical malpractice filed after the three year period has ended, and based upon a complaint which essentially alleges that plaintiffs did not know or with reason could not have known of the fact of injury until after the expiration of such period, is barred by LSA-R.S. 9:5628. I consider that the application of this statute, under the circumstances presented here, offends the access to courts provision of the Louisiana Constitution.
Article 1, Sec. 22, of the Louisiana Constitution states:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
Such provision has no counterpart in the federal constitution. However, this provision, like the Fourteenth amendment to the United States Constitution, protects fundamental interest to a greater extent than interests that are not considered of fundamental constitutional importance. See Everett v. Goldman, 359 So.2d 1256 (La. 1978). LSA-R.S. 9:5628 was enacted in the 1975 legislative session by 1975 La.Acts No. 808, § 1. It was one of several statutes passed in response to sharp increases in medical malpractice insurance rates and the resulting threat of reduced health care to the patient and of greatly increased medical costs to the public. Limitations on the time within which an injured patient may bring a malpractice action serves to restrict the number of suits brought, in turn reducing the amount of medical malpractice insurance rates.
The Louisiana Supreme Court has held the statute to be prescriptive, and then held that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. See Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), and Crier v. Whitecloud, on rehearing, 496 So.2d 305 (La.1986). The discovery rule states that a claimant's cause of action does not accrue until the claimant discovered, or through the exercise of reasonable diligence should have discovered, the injury caused by the defendant's negligence. With all due respect to the Supreme Court, it is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has an opportunity to discover that it exists. Furthermore, in my judgment, the decision to prohibit the application of the discovery rule found in the contra non valentem doctrine has the effect of barring a right of redress or cause of action before it accrues against health care providers and other defendants. Notwithstanding the admittedly strong public policy surrounding the enactment of the statute and the interpretive jurisprudence, it is difficult for me to understand how a statute which extinguishes a right of action prior to the accrual of such action cannot be repugnant to the right of access to the courts guaranteed by Article 1, Sec. 22, of the Constitution of the State of Louisiana. In my judgment, the LeBlancs had a cause of action that is a vested property right. Malpractice claims have long been recognized in this state. A cause of action for malpractice was vested and existed the moment the first drop of tainted blood entered the plaintiff's body. The distinction is that it had not accrued prior to the lapse of a three year period. The statute does not operate as a bar to a cause of action before it existed, but operates to limit the cause of action. Therefore, the LeBlancs had a cause of action that was a vested property right, contrary, in my opinion, to the conclusion reached in Crier, supra, at 310, that the patient, Mrs. Crier's, "vested property right" did not exist and, therefore, she could obtain no relief from Art. 1, Sec. 22.
*526 Accordingly, the Crier case is distinguishable from the action before us.
The constitutional right as stated in Article 1, Sec. 22, is to "an adequate remedy." Certainly this requires that an effective and reasonable alternative remedy be provided by due course of law for vindication of an injured person's constitutional interests, and that the remedy be substantially equal in value to the remedy abrogated by affording essentially comparable substantive protection to one's person, property, or reputation, although the form of the substituted remedy may be different. For instance, worker's compensation benefits are recognized as a substitute remedy for a civil action for damages against the employer. I also note the discussion found in Chief Justice Dixon's dissent in Williams v. Kushner, 549 So.2d 294, 309 (La.1989). In that dissent, Justice Dixon, after analyzing the legacy of the constitutional provision concluded, "only Louisiana's specifically guarantees an `adequate' remedy, it can only be concluded that the addition of this qualifier was intended to protect the measure of relief to be found in our laws." No such remedy has been provided to the LeBlancs.
I do observe that under Article 1, Sec. 22, of the Louisiana Constitution, the legislature is empowered to take action regarding the rights and remedies that are to be applied by the judiciary, including fixing statutes of limitations. Crier, supra. However, I do not find that a showing has been made that an appropriate state interest exists which supports a judicial determination of constitutionality, when a plaintiff neither knows, nor with the exercise of due diligence was able to know of the existence of the injury giving rise to the cause of action. In Graley v. Stayatham, 74 O.O.2d 316, 320, 343 N.E.2d 832, 837-838 (Ohio 1976), the Court made the following observation with regard to a malpractice statute which is the counterpart to our Malpractice Act found in LSA-R.S. 40:1299.41, et seq., which I find applicable to our LSA-R.S. 9:5628:
"Additionally, assuming a valid legislative purpose to enact laws relating to protection of the public's health, this legislation may be counter-productive. The extending of special litigation benefits to the medical profession certainly cannot be considered as relating to protection of the public health. On the contrary, the quality of health care may actually decline. To the extent that in tort actions of the MALPRACTICE type if the medical profession is less accountable than formerly, relaxation of medical standards may occur with the public the victim."
I am, therefore, of the opinion that, as applied to the facts of this case, alleging the inability of the plaintiffs to be aware of the existence of an injury until after the expiration of the three year period, the abolition of the discovery rule is an onerous means of achieving the legislative goal of reducing malpractice lawsuits. I am also of the opinion that to prohibit the application of the discovery rule is an unreasonable construction of the statute.
For the foregoing reasons, I respectfully dissent.