873 So.2d 841 (2004)
Aiko WALKER, et al, Plaintiffs-Appellants
v.
BOSSIER MEDICAL CENTER, Defendant-Appellee.
No. 38,148-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
John L. Hammons, Shreveport, Annis C. Flournoy, for Appellants.
Rene' J. Pfefferle, Baton Rouge, for Appellee, Bossier Medical Center.
Cynthia C. Anderson, Joseph S. Woodley, Shreveport, for Appellee, Lifeshare Blood Centers.
Department of Justice, Richard P. Ieyoub, Attorney General, Merrick J. Norman, *842 Jr., John E. Baker, Assistant Attorney Generals, for Appellee, State of Louisiana.
Before BROWN, WILLIAMS, STEWART, DREW, and LOLLEY, JJ.
BROWN, C.J.
The issue in this case is whether the trial court erred in sustaining defendant's exception of prescription and dismissing plaintiffs' action. To make this decision, we are called upon to determine the constitutionality of the prescriptive period for medical malpractice actions set forth in La. R.S. 9:5628 as applied to a claim asserted by a plaintiff who suffers from a disease with a latency period which exceeds the three-year statutory limitation. We reverse and remand.

Facts
In January 1981, Aiko Walker was hospitalized for surgery at Bossier Medical Center Health Care Foundation ("Bossier Medical") which necessitated a blood transfusion. More than a decade later, in February 1992, Mrs. Walker was diagnosed with Hepatitis C, which was causally related to the 1981 transfusion of defective blood. Thereafter, on January 23, 1993, Mrs. Walker petitioned for a review of her claim by a medical review panel. After an adverse opinion was issued, plaintiffs, Aiko and Paul Walker, filed a petition in district court seeking damages from defendant, Bossier Medical, alleging strict liability. Plaintiffs amended their petition, naming as additional defendants Lifeshare Blood Center and the Louisiana Attorney General.
Bossier Medical filed a peremptory exception of prescription arguing that the three-year limitation period of La. R.S. 9:5628 barred the Walkers' claim.[1] Dr. David Dies testified that 99% of patients contracting Hepatitis C will not experience any symptoms for a period of approximately ten years from the date of receipt of contaminated blood.
Relying on Crier v. Whitecloud, 496 So.2d 305 (La.1986), the trial court found that the malpractice act provides a three-year *843 prescriptive period which runs from the occurrence of the event for all malpractice actions, including those arising from alleged defects in blood. The court rendered judgment sustaining defendant's exception of prescription and dismissing plaintiffs' action. It is from this judgment that plaintiffs have appealed.

Discussion
La. R.S. 9:5628 provides:
(A) No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (Emphasis added).
(B) The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
In Crier v. Whitecloud, 496 So.2d 305 (La.1986), the supreme court held that Mrs. Crier's rights to due process, open access to courts, and equal protection were not violated by the statute of limitations set forth in the medical malpractice act;[2] however, the court has been unwilling to extend this holding beyond the particular facts of Crier. See David v. Our Lady of the Lake Hospital, Inc., 02-2675 (La.07/02/03), 849 So.2d 38, 51. In David, the state's highest court left open the issue of the constitutionality of La. R.S. 9:5628 as it applies to an action filed by a claimant with a disease whose latency period is greater than three years. The court stated in David that the jurisprudence addressing the applicability of La. R.S. 9:5628 to a cause of action brought by a plaintiff suffering from a disease with a latency period in excess of three years has been in a state of flux and remanded the matter to the trial court to allow the plaintiff to amend his petition to include a constitutional challenge. Id.
In Whitnell v. Silverman, 95-0112 (La.12/06/96), 686 So.2d 23, the supreme court held that the three-year statute of limitations set forth in La. R.S. 9:5628 did not violate the Louisiana Constitution's equal protection provision as applied to the plaintiff, whose disease had a latency period of less than three years. In a footnote, the court observed that:
[t]his ruling by the Court does not address the constitutionality of La. R.S. 9:5628 as it applies to individuals with diseases that have latency periods in excess of three years. The court has basically declined to decide on this issue because it is not presently before it.
Whitnell, supra at 29, n. 13.
In his dissent in Whitnell, supra at 33, Justice Lemmon noted:

*844 A case with a lengthy latency period might call for our reexamination of the Crier decision on the constitutionality of Section 5628. Section 5628 distinguishes not only between victims of medical malpractice and victims of other torts, but also between medical malpractice victims with injuries that manifest themselves within three years and victims with injuries that remain latent beyond three years. While such classifications are usually analyzed for equal protection purposes under a rational basis standard (the asserted rational basis being the perceived medical malpractice insurance crisis in the 1970s), there are also due process implications to the analysis.
There have been suggestions that only a small percentage of medical malpractice claimants are affected by a three year statute of repose. (Citation omitted). The converse, however, is equally true only a small percentage of claims against health care providers are eliminated by such a statute. Depriving a few perhaps horribly injured innocent victims of their claims in order to relieve a few health care providers of late filing problems such as lost evidence, faded memories and unavailable witnesses appears to be fundamentally unfair, which is the hallmark of a due process violation. The medical malpractice victim, who has the ultimate burden of proof at trial, labors under the same difficulties caused by the late manifestation of an injury, which is not attributable to the victim.
Louisiana appellate courts which have been presented with attacks on the constitutionality of La. R.S. 9:5628 as it applies to diseases with latency periods in excess of three years have upheld the statute on equal protection grounds.[3] The parties in the instant case have likewise focused the majority of their argument to this court on whether La. R.S. 9:5628 meets constitutional muster from an equal protection standpoint. Pretermitting an analysis of La. R.S. 9:5628 for compliance with constitutional equal protection requirements, our focus is on whether the statute, as applied to a claimant such as Mrs. Walker, whose condition made it impossible for her to know or for any physician to diagnose her disease within the statutory period of limitations, comports with constitutional due process requirements.
The fourteenth amendment to the United States Constitution and Art. I, *845 § 2 of the Louisiana Constitution guarantee freedom from the deprivation of life, liberty or property without due process of law. Crier, supra. The hallmark of property is an individual entitlement grounded in state law which cannot be removed except for cause. Id. It is well settled that the right to file a damage suit in tort is a vested property right protected by the guarantees of due process. Walls v. American Optical Corp., 98-0455 (La.09/08/99), 740 So.2d 1262; Crier, supra; Lott v. Haley, 370 So.2d 521 (La. 1979). When a party has a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right which is given due process protection. Bourgeois v. A. P. Green, Industries, Inc., 00-1528 (La.04/03/01), 783 So.2d 1251; Prejean v. Dixie Lloyds Insurance Co., 94-2979 (La.09/15/95), 660 So.2d 836.
The receipt of defective blood through a transfusion may lead to the development of a disease with a long latency period which cannot be diagnosed within the occurrence-oriented statute of limitations. These diseases can be devastating. A more egregious situation can hardly be conceived than for a claimant such as Mrs. Walker, who suffers from an incurable, debilitating disease which was contracted through no fault of her own, to be prevented from seeking of legal redress by the operation of the statutory limitation set forth in La. R.S. 9:5628, even though she could not have known of the disease. A claimant like Mrs. Walker is surely among the most blameless and seriously injured plaintiffs. To find La. R.S. 9:5628 constitutional as applied to plaintiffs who suffer from diseases with latency periods which prohibit their manifestation and discovery until well after the three-year, event-oriented period provided by Section 5628 would be to prevent a small number of the least blameworthy, yet most seriously injured claimants from having their day in court. To do so would divest such plaintiffs of their fundamental right to due process through the legal system while allowing defendant health care providers to avoid accountability and litigation.
Giving due deference to the function of the legislature, we limit our conclusion to hold that La. R.S. 9:5628 is unconstitutional as applied to these claimants. In declining to apply R.S. 9:5628 to bar plaintiffs' cause of action in the instant case, we are finding that, while the Medical Malpractice Act, including its peremptive period, is rationally related to a legitimate government interest, reasonable medical costs, and readily available health care, the statute's rote application in the case sub judice does not further such interests and ignores the rights of innocent medical malpractice claimants. To require a plaintiff to assert a claim before the alleged malpractice and resulting injury are discoverable imposes an impossible condition on her access to the courts and the pursuit of her tort remedy. As noted by the Indiana Supreme Court in Martin v. Richey, 711 N.E.2d 1273, 1284 (Ind.1999):
[T]he [Indiana] medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim. To hold otherwise would be to require a plaintiff to bring a claim for medical malpractice before becoming aware of her injury and damages, an essential element of any negligence claim, and this indeed would be boarding the bus to topsy-turvy land.

*846 Conclusion

Having found that La. R.S. 9:5628 is unconstitutional as applied to plaintiffs, Aiko and Paul Walker, we reverse the judgment of the trial court granting Bossier Medical's exception of prescription and remand the matter to the trial court for further proceedings. Costs are assessed to defendant, Bossier Medical Center.

REVERSED AND REMANDED.
WILLIAMS, J., dissents with written reasons.
STEWART, J., dissents for reasons assigned by J. Williams.
WILLIAMS, Judge,
I respectfully dissent.
I cannot agree with the analysis employed by the majority in reaching a result which is not supported by application of the statute as written or by prior jurisprudence. The majority has concluded that LSA-R.S. 9:5628 is unconstitutional based on the finding that plaintiffs have a cause of action which is a vested property right and that application of the statutory prescriptive period would divest that right without due process of law. The majority's conclusion is erroneous.
No person shall be deprived of life, liberty, or property, except by due process of law. La. Const. Art. I, § 2. A statute violates due process when it does not bear a substantial relationship to an appropriate governmental objective. The test of substantive due process is whether the statute is reasonable in relation to the goal to be attained and has been adopted in the interest of the community as a whole. Everett v. Goldman, 359 So.2d 1256 (La.1978). We must consider Louisiana law to determine if plaintiffs have a property interest in bringing a cause of action that is protected under the due process clause. In order to file suit, a plaintiff must be able to state a cause of action, which arises upon the occurrence of a wrongful act and the existence of an injury resulting in damages. Walls v. American Optical Corp., supra; Crier v. Whitecloud, 496 So.2d 305 (La.1986).
In Louisiana, law is a solemn expression of legislative will. LSA-C.C. art. 1. Statutes of limitation are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong, but makes a legislative determination that after a certain period of time no cause of action can arise. Our supreme court has held that the right to recover in tort is not a fundamental right. Crier, supra.
The Louisiana Supreme Court has determined that the legislative decision to limit medical malpractice actions to those situations where the injury occurs within three years of the act, omission, or neglect was substantially related to the state's legitimate objective to stabilize insurance rates and thereby provide healthcare for the public at a reasonable cost. Thus, contrary to the majority's finding, since plaintiffs did not file suit within the statutory time limit, they did not have a cause of action which constituted a vested property right protected by due process.
The majority fails to provide any Louisiana authority to support the conclusion that the Section 5628 prescriptive period is unconstitutional as applied to these plaintiffs, based on a finding that application of the statute does not further the state's acknowledged legitimate interest in regulating medical malpractice claims to achieve reasonable medical costs. The cited case from another jurisdiction is not persuasive, since that decision is based on the Indiana court's interpretation of the privileges and immunities clause and the open courts clause of that state's constitution. *847 Although application of the prescriptive period may not further the immediate interest of the plaintiffs in this case, the statute satisfies the due process requirement of adoption by the legislature in the interest of the community as a whole.
Equal Protection
The majority glaringly omits any discussion of the argument that application of LSA-R.S. 9:5628 denied the plaintiffs equal protection of the laws by discriminating on the basis of a physical condition, a tacit acknowledgment that this issue has been decided by Louisiana courts. However, since the parties in this case have devoted a substantial portion of their arguments to the equal protection implications of the prescriptive statute, I will address this issue.
Article 1, Section 3 of the Louisiana Constitution provides that a person shall not be denied the equal protection of the laws and that no law shall arbitrarily or unreasonably discriminate against a person because of physical condition. When a statute classifies persons on the basis of physical condition, the burden is on the state or other advocate of the law to prove that the classification has a reasonable basis. However, a law which classifies individuals on a basis outside the scope of La. Const. art. 1, § 3 will be upheld, unless a member of the disadvantaged class shows that the statute does not suitably further any appropriate state interest. Crier v. Whitecloud, 496 So.2d 305 (La.1986); Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985).
Here, plaintiffs argue that the three-year peremptory period is unconstitutional as applied to Walker because the statute discriminates on the basis of a physical condition by prohibiting a person who has a disease with a latency period in excess of three years from asserting a medical malpractice claim. Plaintiffs urge that the district court should not have relied on the Crier decision because the factual situation in that case differs from that of the present case.
In Crier, the physician implanted a metal rod in Crier's back in 1978 to correct scoliosis. In March 1982, she began to experience severe back pain and learned that the rod in her back had broken. Crier filed suit within one year of this discovery, but more than three years after the date of her back surgery. Although these facts are not identical to the "latent disease" category involved in the present case, the difference is not so significant as to alter the analysis of the issue.
Whether a claimant's delay in filing suit was due to a latent disease or an event that had not yet happened, Crier, like Walker here, could not have known of her injury before the end of the statutory limitation period. Nevertheless, the supreme court held that Crier's equal protection rights were not violated because LSA-R.S. 9:5628 equally affects all persons who undergo medical treatment. The court stated that Section 5628 provides notice that malpractice claims will be barred if not filed within three years from the act, omission, or neglect. Crier, supra. The supreme court further stated that the statute is a legislative determination that three years is a reasonable period of time in which to assert a medical malpractice claim and does not create a classification which discriminates against class members because of their physical condition. Crier, supra.
In their brief, plaintiffs assert that claims involving diseases with latency periods exceeding three years must be distinguished from Crier. However, as previously stated, such a factual distinction is not so significant as to preclude our application of the supreme court's reasoning in Crier to the situation of the plaintiffs in *848 the present case. Although the application of the limitation period of LSA-R.S. 9:5628 in this case leads to a harsh result, this court is constrained to follow our supreme court's prior holding that Section 5628 does not discriminate on the basis of a physical condition in violation of the equal protection clauses of the United States or Louisiana Constitutions.
Consequently, to challenge the validity of Section 5628 on equal protection grounds, plaintiffs bore the burden of proving that the statute did not further an appropriate state interest. However, the plaintiffs failed to satisfy their burden in light of prior supreme court findings that the three-year limitation period was intended by the legislature to alleviate increased insurance costs attributed to the extended period available for filing medical malpractice claims and that the statute was rationally related to the state's interest in securing reasonable medical costs and providing accessible health care. Crier, supra; Trahan v. Our Lady of Lourdes Regional Medical Center, Inc., 00-1140 (La.App. 3d Cir.01/31/01), 778 So.2d 1205.
After reviewing the statutory and case law and considering the circumstances of this case, I must conclude that LSA-R.S. 9:5628 is constitutional as applied to persons who, like Walker, have diseases with latency periods exceeding three years. Until the supreme court of this state rules otherwise or the legislature changes the statute, this law must be followed by this court. Therefore, the district court properly granted the defendant's exception of prescription.
Definition of Malpractice
The majority also omitted a discussion of the plaintiffs' contention that application of Section 5628 differs between public and private medical care providers. In order to address each of the constitutional arguments raised by the plaintiffs, I will briefly discuss this issue.
The plaintiffs contend the disparity between the definitions of "malpractice" in the statutes regarding state and private health care providers violates Walker's right to equal protection. Plaintiffs argue that because the language regarding liability of "health care providers for defects in blood" was deleted from the definition of malpractice in the Medical Liability for State Services Act (MLSSA), LSA-R.S. 40:1299.39, if plaintiff had received her blood transfusion at a state hospital, the prescriptive period of LSA-R.S. 9:5628 would not apply and her claim would not have been barred.
In David v. Our Lady of the Lake Hospital Inc., supra, the Louisiana Supreme Court considered the applicability of LSA-R.S. 9:5628 by looking at the clear and unambiguous language of the statute. Relevant to the concern raised by plaintiffs in their brief, the supreme court in David announced that "the application of LSA-R.S. 9:5628 to a plaintiff's claim does not depend on whether the hospital is a private hospital qualified under the MMA, a private hospital not qualified under the MMA, or a public facility. The statute states its prescriptive periods apply to claims brought against `any ... hospital.' This language is as all inclusive as the statute's provision that `[n]o action' brought against `any ... hospital' can escape the time limitations enacted by the legislature in 1975." Moreover, the supreme court stated that any potential constitutional challenge perceived with respect to the differences in the legislation for private hospitals and public institutions is averted by the application of LSA-R.S. 9:5628 to public and private hospitals.
Following the guidance of our supreme court and applying the plain language of the statute to the circumstances of the *849 present case, I conclude that the prescriptive period of LSA-R.S. 9:5628 applies equally to actions for damages arising out of patient care against both state and private hospitals. Consequently, the plaintiffs' argument is without merit.
For the foregoing reasons, I would affirm the district court's judgment finding that LSA-R.S. 9:5628 is constitutional as applied to the claims of the plaintiffs.
NOTES
[1] Plaintiffs contended that their claim had not prescribed under the general prescription articles on delictual actions, which have been construed to allow prescription to run from the time of the discovery of the harm. The trial court, however, held that La. R.S. 9:5628 was applicable and sustained defendant's exception. On appeal this court found that plaintiffs' strict liability claim was one of medical malpractice because Mrs. Walker's transfusion occurred after the 1976 amendment of La. R.S. 40:1299.41, the Medical Malpractice Act ("MMA"), which defined malpractice to include "all legal responsibility of a health care provider arising from defects in blood." Thus, this court held that plaintiffs' medical malpractice action was subject to the prescriptive period of La. R.S. 9:5628 and affirmed the judgment granting the exception of prescription, but remanded for a hearing on plaintiffs' constitutional claims. See Walker v. Bossier Medical Center, 30,715 (La. App.2d Cir.06/24/98), 714 So.2d 895, writ denied, 98-2029 (La.11/13/98), 730 So.2d 450.

Subsequently, in Williams v. Jackson Parish Hospital, 00-3170 (La.10/16/01), 798 So.2d 921, the supreme court overruled this court's opinion in Walker, finding that a claim for damages caused by a transfusion of tainted blood was a strict liability claim and not one of medical malpractice subject to the prescriptive period of La. R.S. 9:5628. [Also overruled at that time was Boutte v. Jefferson Parish Hospital Services District No. 1, 99-270 (La.App. 5th Cir.07/27/99), 738 So.2d 1188, writ granted, 99-2402 (La.11/19/99), 750 So.2d 208, rev'd, 99-2402 (La.04/11/00), 759 So.2d 45.] The supreme court, however, recently overruled its decision in Williams, supra, holding that the R.S. 9:5628 prescriptive period is applicable to a strict liability claim for damages resulting from a blood transfusion. See David v. Our Lady of the Lake Hospital, Inc., 02-2675 (La.07/02/03), 849 So.2d 38.
[2] In his concurring opinion on rehearing, Crier, supra at 312, Justice Lemmon noted his concerns that La. R.S. 9:5628 presents substantial issues regarding due process, equal protection, and access to the courts. Dissenting, Chief Justice Dixon opined that a statute which allows prescription to run before a tort victim knows or should know that he has been damaged violates the "adequate remedy" required by Art. I, § 22 of the Louisiana Constitution. Id. at 313.
[3] See Jeter v. Shamblin, 34,225 (La.App.2d Cir.12/06/00), 774 So.2d 1071; Martini v. Louisiana State University Medical Center-Shreveport, 28,167 (La.App.2d Cir.01/22/97), 688 So.2d 642; In re Medical Review Panel of Conerly, 02-0485(La.App. 5th Cir.12/30/03), 865 So.2d 198; Hardy v. Blood Systems, Inc., 01-0134 (La.App. 3d Cir.05/02/01), 794 So.2d 13, writs denied, 01-1395, 807 So.2d 234, 01-1928 (La.01/11/02), 807 So.2d 234; Trahan v. Our Lady of Lourdes Regional Medical Center, Inc., 00-1140 (La.App. 3d Cir.01/31/01), 778 So.2d 1205, writ denied, 01-0586 (La.01/11/02), 807 So.2d 226; Neal v. Pendleton Memorial Methodist Hospital, 99-0040 (La.App. 4th Cir.04/21/99), 733 So.2d 698, writ denied, 99-1870 (La.10/08/99), 751 So.2d 221; In re Medical Review Panel of Brown, 97-2803 (La.App. 4th Cir.07/01/98), 715 So.2d 1249, writ denied, 98-2020 (La.11/06/98), 728 So.2d 390, cert. denied, 526 U.S. 1050, 119 S.Ct. 1356, 143 L.Ed.2d 518 (1999); Doe v. Southern Baptist Hospital, 98-0063 (La.App. 4th Cir.05/06/98), 717 So.2d 654, writ denied, 98-1504 (La.09/04/98), 721 So.2d 917. But see In re Matter of Trahan, 03-1002 (La.App. 5th Cir.01/27/04), 866 So.2d 907, a case involving a claimant with a disease with a latency period in excess of three years, in which the Fifth Circuit, finding that the constitutional question was not properly before it for review, set aside the judgment sustaining defendant's exception of prescription and remanded the matter to the trial court to allow plaintiff an opportunity to properly litigate the constitutional challenge.