646 So.2d 989 (1994)
Lorraine S. WHITNELL, Wife of/and James Whitnell,
v.
Dr. Arthur SILVERMAN.
Lorraine S. WHITNELL, Wife of/and James Whitnell,
v.
Dr. Arthur SILVERMAN, Dr. John G. Menville, et al.
Nos. 93-CA-2468, 94-CA-0343.
Court of Appeal of Louisiana, Fourth Circuit.
November 4, 1994.
Rehearing Denied December 13, 1994.
Writ Granted February 3, 1995.
*990 Russ M. Herman, Mark R. Wolfe, Charles O. Taylor, Herman, Herman, Katz & Cotlar, New Orleans, for plaintiffs/appellants.
Chester A. Fleming, III, Ralph T. Rabalais, Boggs, Loehn & Rodrigue, New Orleans, for defendant/appellee.
Richard Ieyoub, Atty. Gen., C.T. Williams, Jr., J. Elliott Baker, Blue Williams, L.L.P., Metairie, for defendant/appellant.
Before KLEES, JONES and WALTZER, JJ.
WALTZER, Judge.
This is an appeal from a July 2, 1993 judgment of the district court providing as follows:
IT IS ORDERED, ADJUDGED AND DECREED that R.S. 9:5628 is found to be unconstitutional in certain circumstances as set forth in the accompanying reasons for judgment, but insofar as it applied to the claims of the plaintiffs, Lorraine S. Whitnell and James Whitnell, R.S. 9:5628 is constitutional.
The trial court's lengthy reasons for judgment are appended hereto as Attachment A.
From that judgment plaintiffs appeal raising the following specifications of error:
1. LSA-R.S. 9:5628 is unconstitutional as it deprives Lorraine Whitnell and others similarly situated of due process of Louisiana law, access to the courts, and unfairly discriminates on the basis of physical condition.
2. The lower court's finding regarding Mrs. Whitnell must be reversed because the trial judge's findings that Lorraine Whitnell had reasonable notice of her injury and, therefore, her case is prescribed, is contrary to the testimony of this case and, therefore, is manifestly erroneous.
3. Crier v. Whitecloud, 496 So.2d 305 (La. 1986) which holds that the one and three year periods of LSA-R.S. 9:5628 are prescriptive and constitutional should be overruled in light of the record in the Whitnell matter and subsequent Louisiana jurisprudence.
The State of Louisiana, defending the constitutionality of the statute, also appealed raising the following specifications of error:
1. The trial court erred in declaring LSA-R.S. 9:5628 to be unconstitutional in certain hypothetical cases and in admitting evidence as to the latency of diseases not suffered by the plaintiff.
2. The trial court erred in ruling that increases in frequency and severity of Medical Malpractice Claims which proceeded the passage of the instant statute were normal actuarial aberrations that did not warrant substantive action by the Legislature.

PROCEDURAL HISTORY
Although the judicially created ban against piecemeal litigation is still in existence, the extent to which lip service is paid to that guideline is evidenced by the citation to the instant case thus far:

Whitnell v. Menville, 525 So.2d 361 (La. App. 4 Cir.1988) writ granted 530 So.2d 553 (La.1988) reversed and remanded 540 So.2d 304 (La.1989) affirmed 592 So.2d 429 (La.App. 4 Cir.1991) granted in part and denied in part 598 So.2d 345 (La.1992) granted 629 So.2d 1146 (La.1993).
For purposes of discussion, the various Whitnell decisions will be referred to herein as follows:
525 So.2d 361 (La.App. 4 Cir.1988) Whitnell I

*991 530 So.2d 553 (La.1988) Whitnell II

540 So.2d 304 (La.1989) Whitnell III

592 So.2d 429 (La.App. 4 Cir.1991) Whitnell IV

598 So.2d 345 (La.1992) Whitnell V

629 So.2d 1146 (La.1993) Whitnell VI

In Whitnell I, this court affirmed the trial court finding that plaintiffs' case had prescribed against one defendant, Dr. John Menville. In Whitnell III, the Louisiana Supreme Court stated:
Dr. Menville (is) the only defendant with whom we are concerned at this time ... (At 306).
* * * * * *
As the negligent act occurred in 1980, and this suit was not brought until 1986, the claim against Menville is prescribed on the face of the petition.
Nor do we find any basis for concluding... that prescription was interrupted ... The claim against Dr. Menville for negligently misdiagnosing the patient in 1980 prescribed, at the latest, in 1983, and prescription thus had already run with respect to that claim when Dr. Silverman was sued in 1985 for negligence on his (Silverman's) part that allegedly occurred in 1983 and 1984. (citations omitted) (At 308).
In discussing whether the prescription against Dr. Menville was interrupted by the doctrine of contra non valentem agere nulla currit praescriptio, the Supreme Court further stated:
As this suit was filed more than three years after the date of the alleged negligent act, it is barred by La.R.S. 9:5628 and the discovery rule embodied in the fourth category of contra non valentem does not save plaintiffs' claim from prescription. Nor, as we have noted, do any of the other three categories of contra non valentem apply to the present claim for negligent misdiagnosis.
Thus we agree with the lower courts that the claim against Dr. Menville is prescribed on the face of the petition, and that there are no grounds for finding that the prescription on the claim set forth in the petition has been interrupted. However, this conclusion does not, in our view, require dismissal of the lawsuit. (At 309).
* * * * * *
In this case, plaintiffs argue, apparently as an alternative to the negligent misdiagnosis theory of recovery asserted in the petition, that Dr. Menville correctly diagnosed Mrs. Whitnell in 1980, realized that she was in danger of bladder cancer, and failed to disclose this information to her. Plaintiffs further argue that by not disclosing to Mrs. Whitnell this material information regarding her health, he violated a fiduciary duty to her, and is liable for damages to the extent that his nondisclosure prevented her from timely discovering her bladder condition and seeking preventive treatment for the same ... Plaintiffs should be allowed to amend their petition in order to assert this claim because, depending on the resolution of certain factual and legal issues, it might not be prescribed. If Dr. Menville withheld information from the patient regarding her physical condition, his act of doing so, while in itself a tort, might also serve to trigger the third category of contra non valentem (prevention by the debtor). (At 310).
* * * * * *
We simply hold that plaintiffs, having raised a colorable argument that certain facts exist which are sufficient to interrupt prescription and to overcome the grounds for the peremptory exception, should be given an opportunity to amend their petition to allege those facts. (At 310).
In Whitnell IV, the Fourth Circuit Court reviewed the trial court's ruling on remand from the Supreme Court. As per the Supreme Court's directions in Whitnell III, on March 28, 1989, plaintiffs filed their First Supplemental and Amended Petition. Dr. Menville subsequently re-filed his Exception of Prescription, which was sustained by the trial court on December 26, 1990. Whitnell IV is plaintiffs' appeal from the December 26, 1990 judgment granting the judgment of prescription. The Fourth Circuit stated:
In Whitnell v. Menville, supra, the Supreme Court previously held that plaintiffs' petition alleging negligent misdiagnosis on *992 the part of Dr. Menville had prescribed on its face based on the provisions of La.R.S. 9:5628(A). (At 430).
* * * * * *
The sole issue presented for our review is whether plaintiffs met their burden in their amended petition of showing an interruption of prescription based on the application of the doctrine of contra non valentem.
In sustaining the exception of prescription, the trial court gave the following reasons for judgment:

Whitnell v. Menville, 540 So.2d 304, precludes plaintiff from recovering on a theory of negligence ... defendant did not intentionally conceal plaintiff's condition from her; he misinterpreted it or did not understand it, which is negligence. (At 431).
* * * * * *
However, a review of the record indicates that Dr. Menville testified in deposition that his interpretation of the diagnosis in the pathology report did not show a presence of cancer cells, but rather revealed an infection of the bladder referred to as cystitis cystica. He testified that the additional diagnosis of squamous metaplasia was consistent with this finding. Further, Dr. Gordon Flake, the pathologist who examined the specimen stated in affidavit that while a bladder injury may result in lesions such as cystitis cystica, metaplasia or cancers, he felt that Dr. Menville's interpretation of his diagnosis was "fair and reasonable." Dr. Menville informed Mrs. Whitnell of his diagnosis of cystitis cystica, and testified that at no time did he have reason to believe that her condition was cancerous ... there are no allegations which state that Dr. Menville interpreted the report as indicating a presence of a carcinoma in situ or a pre-cancerous lesion. Plaintiffs have pointed to no deliberate act of fraud or deception whereby Dr. Menville diagnosed a pre-cancerous condition yet failed to inform Mrs. Whitnell of this finding either during treatment or thereafter. Further, there are no allegations which state that Dr. Menville misrepresented, fraudulently concealed or intentionally failed to disclose any information which would have prevented Mrs. Whitnell from asserting her cause of action and would give rise to the application of contra non valentem.
The trial court apparently concluded that based on the allegations made in the amended petition, plaintiff had failed to meet her burden of proof to show an interruption of prescription based on the application of contra non valentem. We have carefully reviewed the entire record and cannot say that the trial court's conclusion is erroneous. Accordingly, plaintiffs' cause of action prescribed under La.R.S. 9:5628 because suit was filed more than three years after the date of the alleged act of negligence and there was no interruption of prescription. (At 432).
In Whitnell V, the Supreme Court granted in part and denied in part a writ taken from Whitnell IV, stating:
Granted in part and denied in part: (1) granted for the purpose of remanding the case to the trial court for an evidentiary hearing and ruling on whether R.S. 9:5628 is unconstitutional. (2) Otherwise denied. The trial court correctly concluded that the doctor did not prevent timely filing of plaintiff's action intentionally, fraudulently, or by ill practice. It is so ordered.
Accordingly, the case was remanded for a Sibley hearing. At the conclusion of the three day hearing[1], the trial court judge rendered the July 2, 1993 judgment quoted above, finding that the statute was constitutional as to the plaintiffs, but unconstitutional in other circumstances.
Dr. Stuart Hoffman testified to an illustrative list of 19 diseases. The damage caused by those diseases, and likewise a cause of action, will never be discoverable within 3 years of an action or omission, because *993 the diseases have a longer latency period than 3 years. Those diseases are:
1. Carcinoma of the cervixin situ pap smear
2. Mammographic evidence of breast carcinomanon-palpable
3. Familial hypolipidemia
4. Asymptomatic coronary atherosclerosis
5. Early stage multiple myeloma
6. Von Willebrand's disease
7. Leukoplakia
8. Colon polyps
9. Malignant melanoma behind ear
10. Aneurysmthoracic aortacerebral artery
11. Early stage ovarian carcinoma
12. Chronic active hepatitis
13. First degree heart block
14. Second degree heart block
15. Petit mal seizures
16. Congenital absence of the spleen
17. Pernicious anemia
18. Gout
19. Blood Transfusion Acquired AIDS
The trial court found the statute to be unconstitutional as to these diseases, however, it did not find that Mrs. Whitnell fell within the same class of plaintiffs, because Mrs. Whitnell did not have any of these diseases. We disagree.
Louisiana Constitution Article I, § 3 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
We find that the statute is unconstitutional both as to latency periods greater than and less than 3 years, for to hold otherwise is an unreasonable discrimination on the basis of physical condition.
Turning to plaintiff's third specification of error, namely, that Crier v. Whitecloud, supra, should be overruled, we agree that Crier, supra, is a deviation from the law of Sibley and its progeny and that developing line of jurisprudence. Because this court was intrigued by both plaintiffs' argument that the Medical Malpractice Insurance Crisis was largely a fabricated public relations campaign used as justification to raise doctor's insurance rates to an unconscionable level and plaintiffs' further argument that the Crier record contained not a speck of evidence of a Medical Malpractice Insurance Crisis, this court ordered the Crier record[2] from storage. An examination of the Crier record indicates that it is a slim one volume with no boxes or envelopes of exhibits. A review of the record indicates that constitutionality was not an issue raised at the trial court level, hence no evidence was introduced on that issue. Constitutionality was only raised for the first time on appeal and no evidence was entered into the record on any appellate level.
There was not a single iota of evidence relative to the existence or non-existence of a medical malpractice crisis. In short, the Crier opinion is totally unsupported by its record.
While this court may have occasionally wished that it had the power to overrule not only Louisiana, but also United States Supreme Court cases, unfortunately this court does not have that power. While we agree that Crier is unsupported by its record and as such goes beyond the bounds of judicial restraint which should be exercised by any court, much less our highest court, and while we would overrule Crier if we had the power to do so, we do not have that power. Accordingly, plaintiffs' argument on this issue is *994 better addressed to the Supreme Court, as we have no power to overrule Crier.
We do note, however, that the evidence that was so sorely lacking in the Crier record is part of the instant record as a result of the Sibley hearing presently appealed from. The three day hearing presented extensive evidence on the issue of whether a medical malpractice insurance crisis existed.
In its reasons for judgment, the trial court stated:
The evidence establishes that the Legislature enacted Act 808 of 1975 without the benefit of actuarial evidence specifically applicable to Louisiana's situation in 1975. Moreover, analyzing Mr. Lowe's, Mr. Wood's and Mr. Hurley's testimony, the Court finds that it is more probable than not that although the quantity of medical negligence cases being filed, the amounts being paid out by insurers, etc., were increasing, such was a normal actuarial aberration in figures that did not at that time (1975) warrant substantive action by the Legislature.
We agree. Perhaps the best explanation is given by actuary Robert E. Lowe. Initially Mr. Lowe noted that the insurance industry is exempt from antitrust laws. Mr. Lowe testified that the insurance industry undergoes regular 10 year cycles which include a "crisis" every ten years. We have had insurance crises in 1975, 1985, and are due one in 1995. These cycles are well known in the literature and have been discussed by academic writers and industry analysts for decades. The cycles are caused by underpricing by the industry itself. In order to compete for the premium dollar while still maintaining market share, insurance companies will underprice premiums for a period of time. Because they are all competing with each other for the same premium dollar and market share, they will all underprice at the same time. Mismanagement of pricing by the companies themselves creates a depletion of surplus, of loss reserves, such that pricing must increase over a short period to make up for the reserve depletion. As the pricing increases, it places strain on the insurance companies to absorb business. There is a relationship between the amount of business a company can write and the size of its surplus. When the surplus is depleted, its capacity to write new business decreases drastically. In order to add increasing prices in a short period of time at a rapid rate, the insurance companies must dispose of some business. Which business they dispose of is entirely within their control and entirely arbitrary, but the companies dispose of the business which they perceive to be more troublesome, such as medical malpractice and environmental. This disposal of business is a commonly recognized phenomenon in the insurance business and has been written about by many industry commentators. The insurance companies dispose or dump certain kinds of business by simply refusing to write certain lines. One such example is pollution insurance: it is impossible to buy pollution insurance today because companies refuse to write it.
The insurance "crisis" is never a crisis to the insurance companies, who are in fact raising their rates rapidly. It is a crisis to consumers who suddenly must pay rapidly increasing premiums to the insurance companies. Mr. Lowe specifically stated that the insurance industry likes to use the term "crisis" because "they like to get the sympathy of the consumer to support their efforts."
Mr. Lowe also testified that in 1975 and prior thereto, medical malpractice insurance statistics were not separately compiled or required to be separately reported to the Insurance Commissioner's Office. Thus there was no Louisiana medical malpractice information available at the time that the statute was passed. Mr. Lowe also noted that the Louisiana Insurance Commissioner's Reports from 1965 to 1970 did not include the insurance companies' investment income.
I.B.N.R. stands for Incurred But Not Reported Reserves. The insurance companies have very general guidelines on I.B.N.R., which allow them to set their I.B.N.R. almost any way that they want. If at the end of the year an insurance company wants to avoid paying income taxes, they move funds from profits to I.B.N.R. and the funds show up as a liability instead of an asset, thereby avoiding payment of income taxes under Subchapter L. Attached hereto as Attachment B are *995 Mr. Lowe's charts, P-24 thru P-31 indicating the history of the insurance industry from 1967 through 1991.
We agree with the trial court's conclusion that no medical malpractice insurance crisis existed in 1975 when R.S. 9:5628 was passed.
For the reasons discussed, that portion of the judgment finding R.S. 9:5628 unconstitutional as applied to causes of action and damages caused by diseases with a latency period of over 3 years is affirmed and that portion of the judgment finding R.S. 9:5628 constitutional as applied to James and Lorraine S. Whitnell is reversed.
AFFIRMED IN PART & REVERSED IN PART.
KLEES, J., concurs.
KLEES, Judge, concurring.
I agree with the majority's result that R.S. 9:5628 is unconstitutional under Louisiana Constitution Article 1 § 3. As an inferior court we cannot overrule Crier v. Whitecloud, 496 So.2d 305 (La.1986). Since the mandate by the Supreme Court in Whitnell V has been met we need not go further.
NOTES
[1] The Sibley hearing was held on May 25, 26, and 27. When the record came to this court, no transcripts for those three days were included. The Clerk's Office contacted counsel for both sides and the plaintiffs provided this court with their file photocopy of the transcript. Out of an abundance of caution, we have returned the plaintiffs' copy to them.
[2] At one time, West Publishing Company routinely printed the trial court number in every synopsis and the appellate court number in every reported appellate case. Many attorneys would use the trial court number, by which stored records are filed in Louisiana, to examine the original record in cases of bearing upon current cases of particular importance. We are distressed to note that West no longer publishes the trial court numbers, which is a mistake upon their part. The Crier trial court number is CDC # 83-4947 for those scholars interested in reviewing it.