715 So.2d 1249 (1998)
In re MEDICAL REVIEW PANEL for the claim of Clarence BROWN and Gail O'Connor Brown.
No. 97-CA-2803.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1998.
*1250 Charles Owen Taylor, C. Scott Carter, Adrienne Lacour, Carter & Taylor, Metairie, for appellants Clarence and Gail Brown.
Richard P. Ieyoub, Attorney General, J. Elliott Baker, Assistant Attorney General, New Orleans, for appellee Medical Center of New Orleans.
Before BARRY, BYRNES and WALTZER, JJ.
BARRY, Judge.
Plaintiffs appeal the dismissal of their medical malpractice claim based on prescription. They argue they are entitled to a hearing on the constitutionality of the prescription statute, La. R.S. 9:5628; alternatively, prescription was interrupted or suspended based on the defendants' continuing relationship with the injured plaintiff. We affirm.

Facts
On July 12, 1985, two physicians at Charity Hospital (now the Medical Center of New Orleans) removed a mass from the right breast of seventeen month old Crystal Brown. The lesion was benign. Crystal was discharged from the pediatric surgery clinic on August 19, 1985.
When Crystal reached puberty, her left breast developed but her right breast did not. On February 3, 1994 she and her parents were informed that the right breast would not develop because the breast tissue was surgically removed in 1985. On May 6, 1994, Crystal's parents filed a complaint of medical malpractice with the commissioner of administration against Charity and the two doctors. The complaint is not in the record. The parties do not dispute the filing date.
The defendants, represented by the Louisiana Attorney General's Office, invoked the jurisdiction of the district court and urged prescription. The Browns' opposition asserted that prescription did not commence until they knew of the damage; and prescription was interrupted or suspended because the defendants had a continuing professional relationship with Crystal. In a supplemental memorandum in opposition to the exception, the Browns alleged that the prescription statute is unconstitutional. The trial court granted the exception and dismissed the suit with prejudice.

Prescription
A malpractice claim prescribes one year from the alleged act, omission, or neglect, or one year from discovery of the alleged act, *1251 omission, or neglect. La. R.S. 9:5628. However, no claim may be filed after three years of the alleged act, omission, or neglect.
(E)ven as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
La. R.S. 9:5628 A.
Thus § 5628 abrogates in malpractice cases the "discovery" rule, the fourth category of the judicially created doctrine of contra non valentem. Boudoin v. Nicholson, Baehr, Calhoun & Lanasa, 96-0363, p. 7 (La.App. 4 Cir. 7/30/97), 698 So.2d 469, 473.
The Browns did not commence their malpractice claim within three years from the 1985 surgical removal of the breast. Their claim prescribed under La. R.S. 9:5628.

Continual Treatment
The Browns argue prescription was interrupted due to Crystal's continual treatment by defendants. Because the Browns assert interruption or suspension, they have the burden of proving that prescription was interrupted or suspended. Tullier v. St. Frances Cabrini Hospital, 96-738, p. 3 (La. App. 3 Cir. 2/5/97), 689 So.2d 529, 530, writ den. 97-1233 (La.9/5/97), 700 So.2d 508.
Interruption of prescription by a doctor's continued professional relationship with the patient is not based on continuous treatment constituting a continuing tort. Rather, it is based on the premise that the professional relationship will likely hinder the patient's inclination to sue. Abrams v. Herbert, 590 So.2d 1291, 1295 (La.App. 1st Cir.1991).
The record contains no evidence of a continuous relationship between Crystal and the defendants. Medical records submitted by the Browns show that Crystal was an inpatient for the 1985 surgery and that she returned to Charity in 1993 and 1994. There is no basis to hold that prescription was interrupted by a continuing professional relationship.
In their reply brief, the Browns' argue that "the continuing tort of failure to inform existed."
Under the continuous tort doctrine, prescription does not commence until the tortious conduct is abated. Romaguera v. Overby, 97-1654, p. 3 (La.App. 4 Cir. 3/4/98), 709 So.2d 266. To allege a continuing tort, a plaintiff must allege continuous action and continuous damage. Id. The defendants' alleged malpractice occurred when the breast tissue was removed in 1985. There was no continuous act that perpetuated Crystal's injury.
This case is distinguishable from Winder v. Avet, 613 So.2d 199 (La.App. 1st Cir.1992), writs den. 617 So.2d 907 (La.1993), cited by the Browns. In Winder the defendant doctor misdiagnosed the patient's condition as cancer. Following the misdiagnosis the patient and defendant were in continual contact, and the patient was continuously treated for cancer that he did not have. He died of complications from the treatment.
The Browns also rely upon Justice Lemmon's dissent in Whitnell v. Silverman, 95-0112, 95-0259 (La.12/6/96), 686 So.2d 23, 32-35, which considered application of the third category of contra non valentem to a malpractice case. Contra non valentem applies to interrupt or suspend prescription in four general situations, the third of which is:
The debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.
The Supreme Court has examined the application of that exception to a medical malpractice claim but has not "expressly and directly declared that the third category of contra non valentem applies to medical malpractice cases." Fontenot v. ABC Insurance Co., 95-1707, p. 5 (La.6/7/96), 674 So.2d 960, 963; Claim of Aron, 96-2665, p. 4 (La.App. 4 Cir. 5/21/97), 695 So.2d 553, 556-557, citing Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La.1990). However, the Supreme Court has stated that a physician's conduct must rise to the level of concealment, misrepresentation, fraud, or ill practices under that exception. Fontenot v. ABC Insurance Co., *1252 674 So.2d at 963; Claim of Aron, 695 So.2d at 557.
The Browns did not allege concealment, misrepresentation, fraud, or ill practice. Even assuming the third category of contra non valentem may be invoked in a malpractice case, there was no allegation or showing that it applies to this case.

Constitutionality of La. R.S. 9:5628
The Browns argue they are entitled to an evidentiary hearing and ruling from the trial court on whether La. R.S. 9:5628 is unconstitutional as applied to Crystal. See Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1109-1110 (La.1985). They claim the statute unreasonably discriminates against Crystal on the basis of her physical condition. They submit that because Crystal could not have known of the damage before she reached puberty and her breasts developed, her condition had a latency period greater than the three year limitation of § 5628. The Browns urge this Court to remand for an evidentiary hearing. Defendants respond that a remand is not warranted because the Supreme Court has upheld the constitutionality of the statute.
In Crier v. Whitecloud, 496 So.2d 305 (La. 1986), the plaintiff's injury occurred more than three years after her medical treatment. In 1978 a rod was surgically implanted in her back to correct scoliosis. In 1982 the rod broke. The plaintiff filed suit within one year of that discovery. In response to the doctor's exception of prescription, plaintiff claimed the three year limitation in La. R.S. 9:5628 violated her rights to due process and equal protection. The Supreme Court held that § 5628 equally affects all persons who undergo medical treatment and does not discriminate against one class of individuals based on physical condition. Crier, 496 So.2d at 311. Because the classification of which plaintiff complained was outside the scope of La. Const. art. 1, § 3, which prohibits discrimination based on physical condition, plaintiff had to show that the statute did not further an appropriate state interest. Id. The plaintiff offered no evidence to show that R.S. 9:5628 did not further an appropriate state interest and that the statute was not rationally related to a reasonable state interest. Moreover, the Court held that a remand "would serve no useful purpose." Crier, 496 So.2d at 311.
Three justices dissented, two because they would have remanded for a hearing. Justice Dennis would have remanded, but he agreed that La. R.S. 9:5628 did not discriminate based on physical condition:
(T)he constitutional safeguard was designed to protect against invidious discrimination between individuals based on classifications according to the nature of their physical conditions rather than according to the temporal development of their physical damage or conditions.
Crier, 496 So.2d at 314 (Justice Dennis dissenting).
This Court sharply criticized Crier in Whitnell v. Silverman, 93-2468, 94-0343 pp. 5-6 (La.App. 4 Cir. 11/4/94), 646 So.2d 989. In Whitnell, the plaintiff's disease had a latency period less than three years but plaintiffs filed suit more than three years after the alleged malpractice. This Court held La. R.S. 9:5628 "is unconstitutional both as to latency periods greater than and less than 3 years." Id. at 993. This Court distinguished Crier because "the evidence that was so sorely lacking in the Crier record is part of the instant record as a result of the Sibley hearing...." Whitnell, 646 So.2d at 994.
The Supreme Court reversed. Whitnell v. Silverman, 95-0112, 95-0259 (La.12/6/96), 686 So.2d 23. The Court held that the plaintiff had no standing to challenge the constitutionality of La. R.S. 9:5628 in its application to persons whose diseases had latency periods over three years and that this Court erred by deciding that issue. Whitnell, 686 So.2d at 29. The Supreme Court further upheld the constitutionality of the statute as it applied to the plaintiff. Whitnell, 686 So.2d at 30.
The Supreme Court in Whitnell specifically declined to address "the constitutionality of La. R.S. 9:5628 as it applies to individuals with diseases that have latency periods in excess of three years" because that issue was not before the Court. Whitnell, 686 So.2d at 29 n. 13. That suggested the Court might *1253 reconsider Crier were the issue before it. Reinforcing that suggestion, Justice Lemmon stated in his dissent: "A case with a lengthy latency period might call for our reexamination of the Crier decision on the constitutionality of Section 5628." Whitnell, 686 So.2d at 33 n. 5 (Justice Lemmon dissenting). Nonetheless, Whitnell "disagree[d] with the court of appeal's finding that Crier should be overruled." Whitnell, 686 So.2d at 28. That reaffirmed Crier.
The consequence of Crystal's surgery did not physically manifest until she reached puberty more than eight years after removal of the breast tissue. Suit was filed nearly nine years after the alleged malpractice. Crier dictates that the Browns' claim be dismissed under La. R.S. 9:5628. See also Martini v. Louisiana State University Medical CenterShreveport, 28,167 (La.App. 2 Cir. 1/22/97), 688 So.2d 642, which dismissed a malpractice claim by a plaintiff who did not discover a damaged fallopian tube until she attempted to become pregnant six and a half years after the alleged malpractice.
We pretermit the remaining issues. The judgment is affirmed.
AFFIRMED.