613 So.2d 199 (1992)
Jean G. WINDER, et al.
v.
Dr. Phillip AVET, et al.
In the Matter of: Medical Review Panel Proceeding Filed by Jean G. WINDER
v.
Dr. Phillip AVET, et al.
Nos. 91 CA 1018, 91 CA 1019.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
Rehearing Denied March 4, 1993.
Writs Denied May 7, 1993.
Joseph L. Waitz, Houma, for plaintiff and appelleeJean G. Winder et al.
Daniel J. Walker, Houma, T. Williams, Jr., Metairie, for defendants and appellants, Dr. Phillip Avet et al.
Before EDWARDS, SHORTESS, CARTER, CRAIN and GONZALES, JJ.
SHORTESS, Judge.
This is a suit in tort brought over the death of Charles Winder. The wife of the deceased, Jean Winder, and the deceased's children, Charles Winder, Jr., and Carol Winder Thomas (plaintiffs), brought suit against Terrebonne General Medical Center and Dr. Philip Avet, a pathologist practicing *200 at the hospital.[1] After a trial on the merits, the trial court entered judgment in favor of plaintiffs and against defendants. From that judgment defendants appealed and plaintiffs answered.
On February 2, 1982, Charles Winder was admitted to the Terrebonne General Medical Center for testing after experiencing symptoms of jaundice. Dr. Victor Tedesco initially diagnosed Winder as having obstructive jaundice. However, on February 10, 1982, Tedesco performed exploratory surgery after further testing indicated Winder might have cancer of the pancreas. At the time of the surgery Tedesco felt Winder had cancer based on the way the pancreas looked and felt. Nevertheless, during the course of surgery, Tedesco sent several needle biopsies to Avet in order to confirm his suspicions.[2]
Avet examined three frozen sections.[3] Based on the third frozen section, Avet made a diagnosis of poorly differentiated malignancy.[4] After examining the permanent sections, Avet made a diagnosis of well differentiated adenocarcinoma.
Unfortunately, because the pancreas in Winder's case was too densely adhered to other vital structures, it could not be removed surgically. Therefore, relying on the pathologist's positive identification of cancer, Tedesco bypassed the bile duct into the intestines to relieve the obstruction. Tedesco also had Dr. Thomas Weatherall, a radiologist, insert radioactive seeds into the pancreas. The radioactive seeds were inserted primarily as a palliative measure. Weatherall also treated Winder with external radiation from April 21, 1982, through May 25, 1982.[5]
As a general rule, a person with pancreatic cancer has a very short life expectancy. Often pancreatic cancer victims die within six months of the diagnosis. Although sick much of the time, Winder lived far beyond conventional expectations. In November of 1985, Dr. Russell Henry, who began treating Winder's liver infections in 1983, asked Avet to review his original diagnosis in light of the fact Winder had survived far beyond normal expectations. According to Henry, Avet examined the 1982 slides and admitted making a mistake. Specifically, Henry stated: "He said that... [a]fter his re-review that his original diagnosis was a mistaken one and that this washe said something to the effect, `this is something that we taught in pathology, a mistake not to make.'"[6]
At this point Winder received treatment for chronic pancreatitis[7] and treatment designed *201 to counter the adverse effect of the radiation treatment, including more surgery. These attempts proved unsuccessful. Winder died on January 14, 1986. Although no autopsy was performed, it is presumed Winder died primarily from liver failure and infection.
According to plaintiffs' petition, a claim was filed with the Commissioner of Insurance, State of Louisiana. The Medical Review Panel rendered a decision in favor of defendants and against plaintiffs. Plaintiffs filed this suit on October 14, 1988, for damages caused by the alleged misdiagnosis made by Avet.
Defendants contend the trial court erred in finding plaintiffs' suit had not prescribed pursuant to LSA-R.S. 9:5628.[8]
The trial court in its written reasons for judgment stated as follows:
The Court recognizes that there is a three-year prescriptive period for medical malpractice. The alleged misdiagnosis was done on February 10, 1982, and the alleged proper interpretation did not occur until November of 1985. The decedent was treated for cancer from the date of the diagnosis on February 10, 1982 until the diagnosis that he did not have cancer was made in November of 1985. Mr. Winder died on January 14, 1986. The suit in this claim was instituted with the medical review panel on May 23, 1986. There is no basis upon which it can be said that the plaintiffs had any knowledge that there was a misdiagnosis and that the continued cancer treatment was not appropriate. The Court finds as a fact that it was not until November of 1985 when Dr. Russell Henry and Dr. Phillip Avet had their discussion that there was any basis upon which the plaintiffs could have had any knowledge to bring a claim. While the cited statute for medical malpractice has a three-year limitation, the Court must grant a reasonable time to an innocent victim who has absolutely no knowledge nor any way of ascertaining the knowledge that there may have been a misdiagnosis by an expert, as is the case by a pathologist, that a person had cancer, and leaves that person as a victim. Our law has also recognized that victims and innocent people must have some reasonable opportunity in which to protect and institute appropriate action. This Court, therefore, finds as a fact that the Winders were innocent victims and had no way of knowing that there may have a misdiagnosis until November of 1985. They, therefore, in the opinion of this Court, had one year, and since the suit was instituted in May of 1986, the action was timely filed.
The record establishes the misdiagnosis by Avet was not discovered until November of 1985. Winder died only two months after that discovery. Because of Avet's erroneous diagnosis, winder was subjected to continuous treatment for the wrong disease from February 10, 1982, until November 1985. The record clearly shows there was continuous contact between Avet and Winder from the time of misdiagnosis until the time of Winder's death. Between November 2, 1982, and January 14, 1986, Winder was hospitalized at Terrebonne General 13 times for treatment of cancer of the pancreas and resultant complications, including several procedures to correct a biliary duct blockage caused by the tumor. During these hospitalizations, the Terrebonne General Pathology Department, under the direction of Avet, analyzed laboratory specimens taken from Winder, including biopsies, urinalyses, and blood tests for electrolyte levels, coagulation times, blood gases, and cell counts.
*202 Additionally, according to the testimony of Tedesco, more probably than not the complications that caused Winder's death arose from the various treatments used to fight the cancer Winder did not have. Winder placed his trust and confidence in these physicians, and until November of 1985, Winder did not possess knowledge, either actual or constructive, that he was the possible victim of medical malpractice. The cases cited by the defendants, Whitnell v. Menville, 540 So.2d 304 (La.1989), and Crier v. Whitecloud, 496 So.2d 305 (La.1986) (on rehearing), are inapposite to the facts of this case. In Whitnell, the plaintiff alleged in a suit filed in 1986 that the defendant pathologist negligently failed to discover a precancerous lesion in 1980. Plaintiff alleged no further treatment of plaintiff by defendant following the initial misdiagnosis. Crier was a suit filed in 1983 against a physician who allegedly negligently implanted a rod in plaintiff's spine in 1978. No treatment of plaintiff by the defendant between 1978 and 1983 was alleged.
This is not a case requiring the application of the doctrine of contra non valentum as were Whitnell and Crier. This is simply a case of a continuing tort. See South Central Bell Telephone Co. v. Texaco, 418 So.2d 531 (La.1982); Abrams v. Herbert, 590 So.2d 1291 (La.App. 1st Cir. 1991). There was continuous action by Dr. Avet, as described above, which resulted in continuous damage to Winderinfection and liver failure brought about by the radiation treatment for cancer. Based on the record before us, we cannot reverse the trial court on the issue of prescription.
Defendants also contend the trial court erred in finding plaintiffs carried their burden of proof in establishing Avet fell below the standard of care of a practicing pathologist. A plaintiff's burden of proof in a malpractice case is set forth in LSA-R.S. 9:2794, which provides in pertinent part:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261, et seq., a dentist licensed under R.S. 37:751, et seq., or a chiropractic physician licensed under R.S. 37:2801, et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The trial court, among other things, relied heavily on the admission made by Avet to Henry to the effect a mistake was made that students were taught not to make. The trial court also relied on plaintiffs' expert, Dr. Harlan Spujt, who was accepted by the court as an expert in pathology. Spujt testified he examined the slides prepared by Avet. With respect to the frozen sections, Spujt stated that, because he found densely-packed cells around certain nerves, looking at the frozen sections under low magnification the possibility of cancer could not be ruled out. However, when Spujt examined the frozen sections under higher magnification, he felt he was looking at the effects of the freezing of the slides rather than the effects of cancer. Spujt also examined the permanent sections prepared by Avet, which were not frozen specimens. Again, he could find no evidence of cancer.
*203 Tedesco testified he would not have allowed Weatherall to give external radiation treatments to Winder unless Avet positively identified cancer in the permanent sections. Tedesco also stated the radiation treatments contributed to the complications that resulted in the death of Winder.
Findings of fact made by the trial court cannot be overturned on appeal unless manifestly erroneous. As stated by the supreme court in Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), "if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." The manifest error rule applies even when the trial court's findings are based on deposition testimony, as in this case. Virgil v. American Guarantee & Liability Insurance Co., 507 So.2d 825 (La.1987). Reasonable evaluations made by the trial court based on deposition testimony should not be disturbed on appeal. Id. Based on the record before us we cannot conclude the trial court committed manifest error in finding that Avet committed malpractice.
Plaintiffs answered the appeal seeking an increase in the trial court's award. The trial court made the following award:
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of plaintiff, Jean G. Winder, Individually; Charles Winder, Jr.; and Carol Winder Thomas, in the full sum of FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS, together with interest from May 23, 1986, and all costs, and against Terrebonne General Medical Center and Dr. Phillip Avet, jointly and in solido.
Based on statements made by the trial court in its written reasons for judgment, plaintiffs contend the trial court made a mistake in drafting the judgment[9]. In essence, plaintiffs contend the trial court erroneously believed that under LSA-R.S. 40:1299.41-1299.47 the total award based on medical malpractice could not exceed $500,000.00, including medical expenses.
Under LSA-R.S. 40:1299.43(D) medical care and related expenses shall be paid by the compensation fund without regard to the $500,000.00 limitation. Based on the statements made by the trial court, it is clear the actual judgment did not reflect the trial court's intentions. Therefore, the judgment of the trial court is hereby reformed to award past medical expenses in the amount stipulated by the parties, $154,750.73, *204 in addition to the $500,000.00 awarded by the trial court. La.C.C.P. art. 2164. For the foregoing reasons, the judgment of the trial court is amended in part, and, as amended, is affirmed, at defendants' costs.
AMENDED, AND, AS AMENDED, AFFIRMED.
CRAIN, J., dissents and assigns reasons.
GONZALES, J., dissents for the reasons assigned by CRAIN, J., and assigns additional reasons.
CRAIN, Judge, dissenting.
La.R.S. 9:5628 provides that suits against physicians, chiropractors, dentists or hospitals based upon tort, arising out of patient care:
shall be barred unless filed within one year from the date of the alleged act, omission or neglect, or within one year of the date of discovery of the alleged act, omission or neglect; provided however that even as to claims filed within one year from the date of such discovery, in all events such claims muse be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. (Emphasis added).
In spite of the majority attempt to make this a continuing tort, the record actually reflects that plaintiff's decedent (Winder) was allegedly misdiagnosed as having pancreatic cancer on February 10, 1982 by Dr. Avet, a pathologist. Based upon Avet's misdiagnosis Winder was treated with external radiation from April 21, 1982 through May 25, 1982. Treatment from that point until November of 1985 consisted entirely of procedures to relieve problems associated with the original liver problem or damage caused to the liver by the April 21-May 25 radiation therapy. There is not a single bit of evidence in the record that any treatment after May 25, 1982 would have caused additional, or continued damage to the liver or pancreas. It was merely palliative and to relieve symptoms from the original disease or the radiation therapy simply because it was thought that was all that could be done.
In November of 1985 it was decided that the original cancer diagnosis was wrong and treatment was begun for pancreatitis. Winder died on January 14, 1986. The original diagnosis occurred over three years prior to suit being filed.
The majority quotes with approval the trial court who stated:
While the cited statute for medical malpractice has a three year limitation, the court must grant a reasonable time to an innocent victim who has absolutely no knowledge nor any way of ascertaining the knowledge that there may have been a misdiagnosis by an expert."
In all deference to the trial court and the majority on this court, the court cannot grant what it considers to be equitable additional time when the legislature has specifically limited the time for bringing an action. The language approved by the majority applies to LA.R.S. 9:5628 a category of the doctrine of contra non valentum, which the Supreme Court has specifically held is not applicable to the three year period of that statute. In Whitnell v. Menville, 540 So.2d 304 (La.1989) the Court stated:
The only remaining category of contra non valentum and the only one which would normally be available in a case involving negligent misdiagnosis, applies when the cause of the action is not known or reasonably knowable by the plaintiff, though the plaintiff's ignorance is not induced by the defendant.
. . . . .
However, as we noted in Herbert, La. R.S. 9:5628 was intended to restrict the application of the "discovery rule", or the fourth category of contra non valentum, by providing that regardless of the date of discovery, a claim must be filed at the latest within three years of the alleged act, omission, or neglect.
This court ignores both the legislature and the Supreme Court in adopting the language of the trial court and applying it to La.R.S. 9:5628.
The court proceeds from contra non valentum to a theory of continuing tort by *205 pointing out that here there is continuing treatment. They apparently hold that if there is continuing treatment of the patient after the act of malpractice, then the three year period does not begin to run until discovery of the malpractice regardless of whether the continuing treatment causes any additional damage or has anything to do with the original problem. Under this theory presumably a person misdiagnosed with cancer of the colon but treated thereafter for a chronic sinusitis would not be faced with the tolling of the three year period so long as the sinus condition persists. This is not the law and never has been. If the majority is trying to say that continuous treatment is the equivalent of continuous tort they are in error. To prove a continuous tort a plaintiff must allege both continuous action and continuous damage. Abrams v. Herbert, 570 So.2d 1271 (La.App. 1st Cir.1991). There is no continued treatment here which continued to cause damage.
Even if by some stretch the record could be read to find continuing treatment that caused damage there was no continued action on the part of Dr. Avet. After diagnosing cancer on February 2, 1982, Dr. Avet was not involved in Winder's treatment. Dr. Avet is a pathologist. If there was any treatment it was done by Dr. Tedesco, Dr. Henry, and Dr. Weatherall who inserted the radioactive pellets and did the external radiation. The majority states that the record reflects there was "continuous contact" between Avet and Winder. "Contact" is not a tort.
This is purely and simply a case where the act of malpractice is an alleged misdiagnosis which occurred more than three years before it was discovered. The majority opinion in this case appears to take three approaches; change the law, if that doesn't work distinguish it, and if that fails change the facts. The majority of this court obviously disagrees with the limitation for bringing a malpractice suit imposed by La.R.S. 9:5628. They should refer to Crier v. Whitecloud, 496 So.2d 305 (La.1986) where in footnote 8 at pg. 311 the court stated:
While one may disagree with the legislature's choice of three years as the appropriate prescriptive period for medical malpractice, this decision is within the legislature's discretion.
I agree. This case is prescribed. Accordingly, I respectfully dissent.
GONZALES, Judge, dissenting (for the reasons assigned by Judge Crain and assigning additional reasons).
After reviewing the record in this matter, I feel I must disagree with the position expressed in the majority opinion. Although there was some further treatment by Dr. Avet after the initial misdiagnosis of cancer, there was an intervening time period between tests run by Dr. Avet on August 30, 1982 and the next set of tests run by Dr. Avet on November 25, 1985, during which there was no contact between Dr. Avet and Mr. Winder.[1] This court in Abrams v. Herbert, 590 So.2d 1291 (La. App. 1st Cir.1991), has held that the continuing tort concept requires both continuous action by the tortfeasor and continuous damage. Since there was no action by Dr. Avet between August of 1982 and November of 1985, I believe the prescriptive period ran during this time. While deciding that a medical malpractice action has prescribed is an undesirable task, particularly where the action would otherwise seem to have merit, the Legislature in enacting La. R.S. 9:5628 has mandated that no action of malpractice shall be maintained after the passage of three years from the act, omission or neglect. Any permanent injury, such as the loss of a limb or an eye, causes continuous damage. The majority effectively eliminates the continuous act causing damage element of Abrams and as a consequence entirely repeals the legislatively mandated law of prescription. Therefore, I *206 agree with Judge Crain the trial court judgment should be reversed.

EXHIBIT "A"

SUMMARY OF PATHOLOGICAL SPECIMENS OF MR. CHARLES WINDER
First specimen: ST-216-79, submitted on 1/19/79, Prostate gland fragments(tur): Benign nodular prostatic hyperplasia. Signed out by Dr. Hawkins
Second specimen: C82-66, submitted on 2/8/82, Thin needle aspiration and biopsy of pancreas: Negative, the specimen is mostly blood and neutraphils. Signed out by Dr. Avet
Third specimen: S82-431, submitted on 2/10/82, three parts
Part A. Periportal lymph node:
Frozen section diagnosis: Lymph node with reactive hyperplasia surrounded by fibrosis. No malignancy seen but await permanent sections. (Examined 4 frozen sections slides)
Final diagnosis: Lymph node showing reactive hyperplasia and chronic inflammation. No malignancy seen.
Part B. Pancreatic needle biopsy:
Frozen section diagnosis: Small fragment of pancreas and small fragment of fibrous tissue with small ducts with chronic inflammation. No malignancy seen but await permanent sections. (Examined 4 frozen section slides)
Final diagnosis: Well differentiated adenocarcinoma with productive fibrosis. Probably primary in the pancreas.
Part C. Pancreatic needle biopsy:
Frozen section diagnosis: Poorly differentiated malignancy. (Examined 6 frozen sections slides)
Final diagnosis: Well differentiated adenocarcinoma with productive fibrosis. Probably primary in the pancreas. Signed out by Dr. Avet
Fourth specimen: S82-445, submitted on 2/11/82, Gallbladder: Severe chronic cholecystitis. Signed out by Dr. Avet
Fifth specimen: S82-2808, submitted on 8/30/82, Biopsy of (antrum): Small fragment of gastric mucosa showing reparative changes. No malignancy seen in the sections examined. Signed out by Dr. Avet.
Sixth specimen: C85-489, submitted on 11/25/85, Cytology of peritoneal fluid: Many reactive reactive mesothelial cells in clusters and sheets, class II. Signed out by Dr. Fitzpatrick.
Seventh specimen: S85-3956, submitted on 12/4/85, Biopsy of (site of gastroenteropathy): Small fragment of gastric mucosa showing reparative changes and chronic inflammation. No malignancy seen in the sections examined. Signed out by Dr. Avet.
Eighth specimen: S85-4209, submitted on 12/30/85, Needle liver biopsy: Portions of liver showing portal fibrosis with bile duct reduplication compatable with chronic large duct biliary obstruction. Signed out by Dr. Avet.
NOTES
[1] The State of Louisiana, the Patient's Compensation Fund Oversight Board, and the Louisiana Patient's Compensation Fund intervened for purposes of this appeal.
[2] Avet also examined a needle biopsy taken from Winder's pancreas two days prior to the surgery. The tissue was not malignant.
[3] There are two different types of pathology performed on the specimens, frozen and permanent. After receipt of the specimen, the pathologist freezes a portion and makes a slide from a slice of the frozen specimen. A slide is made permanent by setting the tissue in a paraffin solution. The frozen section can be prepared much quicker than the permanent section; however, freezing often alters the architecture of the cell making diagnosis more difficult.
[4] Generally, it appears someone with a more poorly differentiated tumor has a worse prognosis than someone with a well differentiated tumor. However, because of the poor overall diagnosis associated with cancer of the pancreas, the type of the tumor is not particularly important.
[5] Because it is difficult to blindly hit the cancerous area with the needles used in taking the specimen from the pancreas, Tedesco testified he might have allowed Weatherall to insert the radioactive seeds into Winder's pancreas without a positive diagnosis from the pathologist. However, Tedesco testified he would not have allowed Weatherall to treat Winder with external radiation without a positive pathological report. According to Tedesco, unlike the radioactive seeds that are confined to a specific area and do very little damage to organs unaffected by the disease, external radiation damages a large area of the body often unaffected by the disease. Tedesco testified that many of Winder's complications arose from the external radiation treatments.
[6] Additionally, most of the medical experts who testified agreed that more probably than not Winder did not have cancer of the pancreas.
[7] Chronic pancreatitis is not usually fatal. According to Tedesco, if Winder had chronic pancreatitis and was properly treated, he would have had an ordinary life-span.
[8] LSA-R.S. 9:5628 provides in pertinent part:

A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299-41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
[9] Specifically, the trial court stated the following:

It is the opinion of this Court that the agonizing, excruciating pain and suffering of the decedent, Charles Winder from February of 1982 until his death in January of 1986 should have a value of at least FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS;
It is the opinion of this Court that the surviving widow, Jean G. Winder, for the loss of love and affection and wrongful death of her husband should also have a claim of FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS, and that each child, Charles Winder, Jr. and Carol Winder Thomas, should have a claim for ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS each.
The parties stipulated to the following medical bills:

Terrebonne General Medical
Center (for payments made
through May, 1983)................$ 30,710.80
Terrebonne Anesthesia............. 3,386.00
Family Drugs...................... 2,749.44
Peoples Drugstore................. 1,239.47
Houma Radiology .................. 3,001.50
Russell P. Henry.................. 3,565.00
K. Gerald Haydel and Victor
Tedesco........................... 11,400.00
Terrebonne General Medical
Center............................$154,750.73

The Court finds that these medical bills are directly related to the treatment of Charles Winder as a consequence of the misdiagnosis by Dr. Avet and that these bills would not have been incurred but for the misdiagnosis and, therefore, awards to and unto the surviving widow, on behalf of the Estate, judgment for these medical bills.
The Court would award to and unto the plaintiffs the sum of ONE MILLION THREE HUNDRED FIFTY FOUR THOUSAND SEVEN HUNDRED FIFTY AND 73/100 ($1,354,750.73), DOLLARS, but based upon the limitations made in medical malpractice, awards, therefore, the sum of FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS, plus interest from the date that this claim was brought with the medical review panel and for all costs.
[1] A summary (attached hereto as Exhibit "A") of the pathological services provided by Dr. Avet to Mr. Winder was prepared and attached to his deposition which was introduced into evidence at the trial of this matter. This summary corroborated the testimony of Dr. Avet that he provided no services in this case between August 30, 1982 and November 25, 1985; this testimony was uncontradicted.