682 So.2d 249 (1996)
Joan C, wife of/and Ronald M. SHORT
v.
Clifford GIFFIN and Duplantier, Hrapman, Hogan & Maher, et al.
No. 96-CA-0361.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 1996.
Rehearing Denied November 22, 1996.
*250 Stephen D. Marx, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, for appellee William Kurtz.
Daniel Lund, Robert E. Durgin, Stephanie A. Lottinger, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, LA, for appellees Clifford Giffin, Duplantier, Hrapmann, Hogan & Maher.
*251 Harry D. Hoskins, III, Hoskins & Hoskins, New Orleans, LA, for appellants William E. Wright, Jr., W. Christopher Beary, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for appellee International Surplus Lines Ins. Co.
Before CIACCIO, LOBRANO and JONES, JJ.
LOBRANO, Judge.
Plaintiffs, Joan and Ronald Short, appeal two trial court judgments: 1) the June 30, 1995, judgment granting summary judgment in favor of defendants, Duplantier, Hrapmann, Hogan and Maher, Clifford Giffin and William Kurtz dismissing plaintiffs' action against those defendants as prescribed and denying plaintiffs' cross motion for summary judgment; and 2) the November 10, 1995 judgment granting summary judgment in favor of defendants William Hogan, Jr., Kenneth Brooks, William Stamm, David Erath, Michael O'Rourke, Duplantier, Hrapmann, Hogan and Maher, L.L.P. and International Surplus Lines Insurance Company dismissing plaintiffs' claims against those defendants and denying plaintiffs' motion for new trial. We affirm both judgments.
FACTS AND PROCEDURAL HISTORY:
In 1982, plaintiffs sought the accounting services of the firm of Duplantier, Hrapmann, Hogan and Maher (DHH & M). In connection with the preparation of plaintiffs' tax returns, Clifford Giffin of DHH & M sent plaintiff information in late 1982 regarding an investment in a limited partnership which he allegedly suggested could provide certain tax benefits to plaintiffs. In December, 1982, plaintiffs purchased an interest in the limited partnership known as Barrister Associates Series 99 (Barrister) through defendant William Kurtz, the Barrister sales representative, at a meeting arranged by Giffin. In 1984, plaintiffs were notified that the Internal Revenue Service (IRS) was examining the Barrister partnership. Plaintiffs later received notice from the IRS that tax benefits claimed by them for the Barrister investment for the 1982 and 1983 tax years were being disallowed. On May 17, 1989, plaintiffs signed the IRS Offers of Settlement agreeing to pay additional taxes, penalties and interest resulting from the disallowed tax benefits related to the Barrister investment.
On October 2, 1990, plaintiffs filed suit against Giffin and DHH & M for damages allegedly caused by these defendants' role in plaintiffs' investment in the Barrister partnership. Plaintiffs subsequently supplemented and amended their petition several times. In these various amendments, plaintiffs added as defendants Kurtz, Hogan, Brooks, Stamm, Erath, O'Rourke, DHH & M, L.L.P.[1] and International Surplus Lines Insurance Company, DHH & M's liability insurer. In their petition, as supplemented and amended, plaintiffs alleged several causes of action including accounting malpractice, violations of the Louisiana Blue Sky Laws, LSA-R.S. 51:701 et seq., civil conspiracy under LSA-C.C. art. 2324 and breach of fiduciary duty.[2]
Defendants Giffin and DHH & M filed a motion for summary judgment based on a defense of prescription/peremption. In support of that motion, they argued that the provisions of LSA-R.S. 9:5604, which establish a one and three year peremptive period in an action for professional accounting liability, was applicable. Giffin and DHH & M urged that all four of plaintiffs' theories against them arise out of plaintiffs' engagement of DHH & M to provide professional accounting services. According to Giffin and DHH & M, the plaintiffs had knowledge, more than one year prior to the filing of the instant suit, that a sizable portion of the tax benefits claimed in connection with their Barrister partnership interest was being disallowed by the IRS and thus all of their claims were prescribed.
Plaintiffs opposed the summary judgment motion arguing: (1) material issues of fact remained; (2) R.S. 9:5604(B) exempts claims occurring before September 7, 1990 and thus contra non valentem was applicable; (3) *252 their breach of fiduciary duty and Blue Sky Law allegations against the accountants are not included "claims" under R.S. 9:5604(C) because that subsection was not enacted until 1992; (4) the continuous tort doctrine suspended the prescriptive toll; (5) fraud precludes the application of R.S. 9:5604; and (6) the 1992 amendment to R.S. 9:5604 is unconstitutional because it impairs vested rights. In addition plaintiffs also filed a cross-motion for summary judgment on their Blue Sky and Civil Code article 2324 (conspiracy) claims.
Kurtz also filed a motion for summary judgment on the Blue Sky Law claim against him arguing it had prescribed.
On June 30, 1995, the trial judge granted the motions of Giffin, DHH & M and Kurtz, dismissing plaintiffs' claims against those defendants as prescribed. Plaintiffs' cross-motion was denied. The trial judge reasoned that the claims against the accountants were subject to a one year prescriptive period. He found that the plaintiffs knew, at the latest, on May 17, 1989, that the tax benefits from the Barrister partnership were disallowed by the IRS, and hence the prescriptive toll commenced. Citing Rhoden v. Wegmann, 569 So.2d 35 (La.App. 4th Cir.1990), writ denied, 572 So.2d 66 (La. 1991), the court concluded that plaintiffs were bound to have known sufficient facts to put them on notice of any alleged malpractice by the accountants, and thus the suit filed in October of 1990 was not timely.
With regard to defendant Kurtz, the trial judge reasoned that any cause of action against Kurtz under the Louisiana Blue Sky Laws would have prescribed two years after the sale of the Barrister partnership in December, 1982. Because no suit was filed against Kurtz by December, 1984, plaintiffs' claims against him were also prescribed. The judge concluded that plaintiffs' 1990 suit against their accounting firm could not revive their previously prescribed claims against Kurtz.
After the June 30, 1995, trial court judgment was rendered, a motion for summary judgment was filed by the remaining accountant defendants, Hogan, Brooks, Stamm, Erath, O'Rourke, and DHH & M, L.L.P., and their liability insurer, International Surplus. The remaining accountant defendants argued that their alleged liability in this case was solely derivative of the alleged liability of Giffin and DHH & M who had been dismissed. International Surplus argued that if the claims against all of the insured accountants are dismissed, then the claims against their malpractice insurer should also be dismissed. Plaintiffs filed a motion for new trial as well as an opposition to the additional motions for summary judgment.
On November 10, 1995, the trial judge denied plaintiffs' motion for new trial and granted summary judgment in favor of the remaining defendants. Plaintiffs now appeal the trial court judgments of June 30, 1995 and November 10, 1995.[3]
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730. The summary judgment article, LSA-C.C.P. art. 966, was amended by the Louisiana Legislature in 1996. See, 1996 La.Acts, No. 9. The amended version of article 966 became effective on May 1, 1996[4] *253 and instructs that the summary judgment procedure is favored and "shall be construed to accomplish these ends." We interpret the amended version of C.C.P. art. 966 to be procedural in nature and, therefore, subject to retroactive application. LSA-C.C. art. 6.
However, even though legislative intent is to favor summary judgments, the amended version of C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966C. Only after the mover has met this burden may summary judgment be rendered against "an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." LSA-C.C.P. art. 966C. Thus, even under the amended version of article 966, if genuine issues of fact remain, this Court must still reject summary judgment.
Plaintiffs argue that their action against the accountant defendants was timely filed under all four theories of recovery alleged: 1) accounting malpractice, 2) breach of fiduciary duty, 3) violations of the Louisiana Blue Sky Laws, R.S. 51:712 and 714, and 4) civil conspiracy under C.C. art. 2324. Their argument is simply that the petition seeks damages for both tort and breach of fiduciary duty.
The same acts or omissions may constitute breach of both general duties and contractual duties and may give rise to actions both in tort and in contract. Succession of Dubos, 453 So.2d 323 (La.App. 4th Cir.1984); United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d 783 (La.App. 1st Cir.1992). However, in such cases, the allegations of the petition and character of the pleadings determine the true nature of the action and the appropriate prescriptive period. Id. See also, Fontaine v. Roman Catholic Church, 625 So.2d 548 (La.App. 4th Cir.1993).
Plaintiffs allege breach of fiduciary duty by the accountant defendants and also allege that these defendants caused defendant Kurtz to breach his fiduciary duty to plaintiffs, i.e. Civil Code article 2324 liability.[5] Plaintiffs argue that this breach of fiduciary duty claim makes their action a personal action subject to a ten year prescriptive period. We disagree.
In Gerdes v. Estate of Cush, 953 F.2d 201 (5th Cir.1992) the court concluded that the alleged actions (or inactions) of an attorney, who was also acting under a mandate, were subject to the one year prescriptive toll for legal malpractice and not the ten year period for breach of fiduciary duty. The court concluded that "[i]n the absence of self dealing or a breach of duty of loyalty, negligence by a mandatory is subject to the one year prescriptive toll." Id. at 205
The allegations of breach of fiduciary duty in the instant case are not independent of the allegations related to accountant malpractice. A review of plaintiffs' pleadings and the factual *254 allegations regarding the accountant defendants contained therein reveal that the true nature of this action is a tort claim for professional accounting liability, not breach of fiduciary duty.
We initially observe that the following germane facts are undisputed: plaintiffs purchased the Barrister partnership interest in December, 1982, were told in June, 1984 that the IRS was examining the Barrister partnership, were notified by the IRS that their 1983 tax benefits were being questioned in November, 1985, were notified in December of 1985 by Barrister general partners that the tax benefits were probably going to be disallowed, were told by Giffin in March, 1987 that they would not receive the full tax benefits claimed for 1982 and 1983, received letters from the IRS, including offers of settlement, in March, 1989, sought the advice of attorney Elizabeth Williams regarding the IRS settlement offers in April, 1989 and signed the IRS offers of settlement on May 17, 1989.
Considering this chain of events, we agree with the trial court's determination that plaintiffs knew or should have known sufficient facts to put them on notice of defendants' alleged malpractice, at the very latest, on May 17, 1989 when they signed the IRS offers of settlement. See, Rhoden v. Wegmann, supra. Having determined that plaintiffs' cause of action is delictual in nature and arose at the latest, May 17, 1989, we now must determine the applicable prescriptive period.
In their arguments presented in the summary judgment proceedings, and before this court, both plaintiffs and defendants cite LSA-R.S. 9:5604 and both claim that various provisions of this accounting malpractice statute support their respective positions. R.S. 9:5604 was enacted in 1990, with an effective date of September 7, 1990, and was amended in 1992 to state as follows:
A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, action must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning the Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, the prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined is Civil Code Article 1953.

*255 F. The peremptive periods provided in Subsections A and B of this Section shall not apply to any proceedings initiated by the State Board of Certified Public Accountants of Louisiana.
Defendants argue that the 1992 amendment, R.S. 9:5604(B), mandates that the statute be applied retroactively in this case to hold that plaintiffs had one year to file suit from the date that the alleged act, omission or neglect was discovered or should have been discovered and that one year is peremptive, not prescriptive.[6]
Plaintiffs argue that the second sentence of R.S. 9:5604B provides an exemption which allows all professional accounting liability claims with causes of action occurring prior to September 7, 1990 to be filed up until September 7, 1993. Since their cause of action occurred prior to 1990, plaintiffs contend that they had until September of 1993 to file suit and thus their October, 1990 filing was timely.
Despite these arguments, we find that R.S. 9:5604 is not applicable in this case. When plaintiffs' cause of action arose, on May 17, 1989, it was governed by LSA-C.C. art. 3492 which states that delictual actions are subject to a one year prescriptive period. Thus, unless interrupted or suspended, plaintiffs' action prescribed on May 17, 1990, before the effective date of R.S. 9:5604, September 7, 1990. Whether or not the provisions of R.S. 9:5604 and its 1992 amendment would benefit plaintiffs is irrelevant because, absent suspension or interruption, their claim had prescribed prior to the enactment of the statute. See, Phillip v. Home Insurance Co., 95-406 (La.App. 5th Cir. 2/27/96), 671 So.2d 943, writ denied, 96-1238 (La. 6/28/96), 675 So.2d 1124. We are satisfied that the Legislature did not intend through its enactment of the 1992 amendment to R.S. 9:5604, to revive claims which had already prescribed by the time the original version of R.S. 9:5604 was enacted. A contrary ruling would, in effect, permit a prescribed claim to be resurrected by legislative act.
Plaintiffs argue, however, that prescription was suspended by the contra non valentem doctrine. Although R.S. 9:5604 provides that the time limitations are peremptive, because we conclude that that statute is inapplicable, the doctrine of contra non valentem is viable. This doctrine provides that prescription does not run against a person unable to bring an action. Phillip v. Home Insurance Co., supra. Plaintiffs argue that they were prevented from availing themselves of their cause of action by Giffin's failure to disclose his fault to them and allegedly quieting their suspicions when the IRS began examining the Barrister partnership.
This Court has previously rejected a similar argument regarding whether a tortfeasor has a duty to disclose his own alleged fault. In Rhoden v. Wegmann, supra, the plaintiff argued that the defendant had concealed facts from plaintiff thereby preventing plaintiff from filing suit. In finding that the doctrine of contra non valentem had been *256 properly excluded by the trial judge, this Court rejected plaintiff's argument by stating:
"This reasoning must fall as it would lead to an absurd result: that is to state that prescription would not run against any tortfeasor who claimed he had done nothing wrong." Id. at 37.
The undisputed facts show that plaintiffs, in May of 1989, were well aware that their investment in the Barrister partnership would not reap the tax benefits they thought it would. They signed a consent agreement with the IRS for back taxes, interest and penalties. There is absolutely no evidence to remotely suggest they were prevented from instituting legal proceedings against defendants at that time. In fact, after they received the offer of settlement from the IRS in March of 1989, they hired an attorney for advice on their tax problem. That same attorney filed the instant suit in October of 1990.
Plaintiffs also argue that contra non valentem applies because of the continuing professional relationship between plaintiffs and defendants which allegedly existed until plaintiffs discharged defendants in January, 1990. In analogous legal malpractice cases, prescription is suspended during an attorney's continuous representation of a client involving the specific subject matter in which the alleged wrongful act or omission occurred. Braud v. New England Insurance Company, 576 So.2d 466 (La.1991). Applying the rule to this accountant malpractice case, we find that plaintiffs have not alleged that defendants performed any work for them regarding the specific subject matter of the Barrister partnership investment within one year before they filed suit. In fact, plaintiffs did not offer any documentation to show that they forwarded any documents to Giffin regarding the Barrister partnership after the May 17, 1989 signing of the IRS offer of settlement. In arguing for the application of the continuous representation rule, plaintiffs point to work performed by the accountant defendants in July, 1989 regarding sale of real estate, totally unrelated to the Barrister partnership. Plaintiffs do not allege that the defendants performed any work for them after that date.
Giving plaintiffs every benefit of the doubt by concluding that prescription was suspended until July, 1989, plaintiffs' suit would still be untimely. The fact that plaintiffs did not officially terminate their professional relationship with defendants until January, 1990 does not automatically suspend prescription until that date under the continuous representation rule because defendants' involvement with plaintiffs' Barrister investment ended more than one year before suit was filed.
Plaintiffs alternatively argue that if contra non valentem is not applicable, then this is a case of a continuing tort which did not end until plaintiffs discharged defendants in January, 1990. Plaintiffs cite Winder v. Avet, 613 So.2d 199 (La.App. 1st Cir.1992), in which a physician's misdiagnosis and treatment based on that misdiagnosis was found to be a continuing tort for which prescription did not begin to run at least until the correct diagnosis was made. Plaintiffs claim that Giffin's failure to inform them that the Barrister investment had no merit constituted a continuing tort because their deficiency owed to the IRS increased over the years due to accrual of interest.
In order to create a continuing tort, there must be continuing acts of fault coupled with continuing damage. National Council on Compensation Insurance v. Quixx Temporary Services, Inc., 95-0725 (La.App. 4th Cir. 11/16/95), 665 So.2d 120. The unrefuted evidence is that plaintiffs were absolutely aware of the Barrister failure in May of 1989. Assuming arguendo that up until that date prescription was suspended because of defendants' "continuing tort", even so, from that date forward there is no evidence to suggest defendants did anything which would further suspend prescription. The Barrister tax failure was known and resolved in May of 1989. There could be no continuing tort after that date. Again, the October 1990 filing was untimely.
Plaintiffs also allege claims under the Louisiana Blue Sky Laws, LSA-R.S. 51:701 et seq., against the accountant defendants *257 and William Kurtz, the Barrister sales representative who sold the partnership interest to plaintiffs. Kurtz admits that he is a "seller" for purposes of the Louisiana Blue Sky Laws. The accountant defendants do not. However, even assuming arguendo that the accountants could be considered "sellers" under this section, any claims against them under the Louisiana Blue Sky Laws are prescribed by the clear wording of R.S. 51:714C(1) which states:
"No person may sue under this Section more than two years from the date of the contract for sale or sale, if there is no contract for sale."
It is undisputed that the sale of the partnership interest to plaintiffs occurred in December 1982. Therefore, literal application of the statute would result in prescription tolling in December of 1984. Plaintiffs argue, however, that the two year limitation of R.S. 51:714(C)(1) is a prescriptive period subject to suspension and/or interruption.
Although we agree that R.S. 51:714(C) is a prescriptive, rather than a peremptive statute,[7] we still conclude plaintiffs' claim against Kurtz is prescribed. The claim against Kurtz was filed in July of 1994, five years after the May, 1989 settlement with the IRS. There is no evidence to suggest any interruption or suspension of prescription during that period of time. Furthermore, since the claim against the accountant defendants was untimely filed, there was no interruption as to Kurtz by that filing. Simply put, even assuming that Kurtz and the accountant defendants may have solidary obligations by virtue of Civil Code article 2324, the untimely filing against one solidary obligor cannot revive nor interrupt a claim against the other.
Plaintiffs next allege that Kurtz had a fiduciary relationship with them and that he breached this relationship. They claim that a ten year prescriptive period is applicable. We disagree.
It is undisputed that Kurtz sold this investment to plaintiffs in December, 1982 after an earlier meeting in November, 1982 and never had any other contact with plaintiffs. The two cases cited by plaintiffs, First Metropolitan Bank v. Plaia, 384 So.2d 560 (La.App. 4th Cir.1980) and Succession of Dubos, 453 So.2d 323 (La.App. 4th Cir.1984), are distinguishable because they involved securities brokers who had a fiduciary duty to plaintiffs who had accounts with them. Kurtz's involvement in this case was not as a broker, but as a salesman, who completed a one-time transaction with plaintiffs. No fiduciary relationship existed so there can be no claim for breach of fiduciary duty. The only prescriptive period applicable to Kurtz is the statutory two year period, which we conclude, has run.
For these reasons, the trial court judgments of June 30, 1995 and November 10, 1995 are affirmed. Plaintiffs' claims against all defendants in this case have prescribed and defendants are entitled to summary judgment.
AFFIRMED.
NOTES
[1] Subsequent to the filing of plaintiffs' original petition, DHH & M changed its status from a professional accounting partnership to a limited liability professional accounting corporation.
[2] The amended claim against William Kurtz alleges a violation of Louisiana's Blue Sky Laws and breach of fiduciary duties. It was filed July 27, 1994.
[3] Plaintiffs omitted David Erath and William R. Hogan, Jr. from their motion and order of appeal. Thus the judgment dismissing those two defendants is final.
[4] The 1996 amended version of LSA-C.C.P. art. 966 states as follows:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.
[5] In 1982, Civil Code article 2324 provided in pertinent part:

He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
[6] R.S. 9:5604 was initially enacted in 1990 and provided as follows:

A. No action for damages against any accountant duly licensed under the laws of this state, any partnership of such accountants, or any professional accounting corporation, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code art. 1953.
This statute was amended in 1992 to its current state. The amendment retained the provisions of the 1990 version, with some adjustments in language, and added the retroactivity provision, the window of opportunity provision and the provision stating that the periods of limitation are peremptive and may not be renounced, interrupted or suspended. The amendment also adds language stating that prescriptive and peremptive periods for professional accounting liability actions are governed exclusively by this Section.
[7] See, Landry v. American Assurance Co., 688 F.2d 381 (5th Cir.1982).